PDM Mechanical Contractors, Inc. *vs.* Suffolk
Construction Company, Inc., & another.[1]

No. 91-P-1440.

Suffolk. April 8, 1993. - August 25, 1993.

Present: PERRETTA, SMITH, & PORADA, JJ.

*Contract,* Building contract, Performance and breach, Implied contract.
*Consumer Protection Act,* Availability of remedy, Unfair act or prac-
tice, Businessman's claim.

In an action in which counterclaims for breach of contract were asserted,
where the jury found the plaintiff in breach of contract, the judge cor-
rectly dismissed the plaintiff's claim for contract damages and entered
judgment on the plaintiff's claim in quantum meruit for the amount
determined by the jury to be the fair value of materials and labor pro-
vided by the plaintiff. [230-232]

The judge in a civil action involving breach of a construction contract cor-
rectly denied the defendants' motion for judgment notwithstanding the
verdict on the plaintiff's quantum meruit claim where the jury's verdict,
on correct jury instructions, was supported by the evidence. [232-234]

In a civil action, the judge properly denied the defendants' motion for a
new trial based on alleged misinformation provided by the plaintiff,
where the defendants did not show any surprise, mistake, or excusable
neglect in explanation of why that allegation could not have been raised
or explored before or during trial. [234]

On a civil claim seeking damages under G. L. c. 93A for a construction
company's unfair act in demanding a contractor obtain a multi-million
dollar performance bond within a two-day period over a weekend, the
judge properly placed the burden on ·the contractor to prove that it
could have obtained such a bond within a reasonable time and correctly
concluded that the contractor had not sustained its burden of proof.
[237-238]

At the trial of a claim brought under G. L. c. 93A, in which the judge
ruled that the defendant committed an unfair act but that the plaintiff
did not establish any entitlement to damages on that account, the plain-
tiff's failure to plead expressly the specific act the judge found to be
unfair did not prejudice the defendant. [238]

---

[1]Seaboard Surety Company.

CIVIL ACTION commenced in the Superior Court Department on July 5, 1988.

The case was tried before *Margot Botsford*, J.

*Peter J. Gagne* for the plaintiff.

*Deborah L. Thaxter* for Suffolk Construction Company, Inc.

*Walter R. May, Jr.*, for Seaboard Surety Company.

PERRETTA, J. These cross appeals arise out of a contract under which PDM Mechanical Contractors, Inc. (PDM), was to install plumbing and mechanical systems for Suffolk Construction Company, Inc. (Suffolk), in its construction of a multi-building apartment complex known as the Arboretum Project. After about six months and while work was in progress, Suffolk terminated PDM's involvement with the project. PDM brought this action against Suffolk and its surety, Seaboard Surety Company (Seaboard), asserting claims for breach of contract, quantum meruit, and unfair acts under G. L. c. 93A, § 11. Suffolk counterclaimed, alleging a breach of contract by PDM. Because the jury found for both PDM and Suffolk on their breach of contract claims, the judge entered judgment for PDM on the quantum meruit recovery. Having reserved decision on the c. 93A claim for herself, the judge found that Suffolk's unfair act caused PDM harm, but not money damages, and awarded PDM counsel fees and costs. We affirm.

1. *Background.* There was evidence to show that, in September of 1987, Suffolk and PDM exchanged letters of intent memorializing their agreement that PDM would engineer, prefabricate, and install interior plumbing and HVAC systems for Suffolk at the Arboretum project for an agreed price of $2,470,000. The parties also agreed that they would negotiate a formal contract and that PDM would provide a performance bond in a form acceptable to Suffolk. Although work began on the project, Suffolk did not submit a formal contract to PDM for execution until early February, 1988. Shortly after receiving the contract and while it was under review, PDM complained of Suffolk's untimeliness in returning approved drawings and its failure to prepare the

buildings adequately for installation of the internal plumbing systems. On March 10, 1988, Suffolk terminated PDM's involvement with the project, accusing it of poor workmanship, unsatisfactory design work, and failure to execute the contract and to provide a bond. Although communication concerning PDM's work continued, Suffolk, on March 18, 1988, a Friday, notified PDM that it was to execute and deliver, by Monday, 11:00 A.M., the contract and the performance bond. When PDM could not meet the deadline for providing the performance bond, Suffolk terminated the contract and hired another subcontractor. Suffolk produced evidence to show that it was required to pay the new subcontractor $29,000 to correct some of PDM's work.

2. *PDM's contract claim.* In response to special questions, the jury found that the parties had entered into a contract, that each was in breach of the contract, that Suffolk's damages were $29,000, that PDM's damages were $1,272,866, that PDM had tried in good faith fully to perform its work, that it had substantially performed its work, and that the fair value of the labor and materials provided by PDM was $248,160. Because of the jury's finding that PDM was in breach of contract, the judge dismissed its count for contract damages and entered judgment on PDM's claim in quantum meruit for the amount determined by the jury to be the fair value of the labor and materials provided to Suffolk.

PDM argues that, because the jury responded affirmatively to the special question on the quantum meruit claim, whether it "[did] try in good faith to fully perform its work . . . and did substantially perform its work," they also implicitly found that PDM's breach was "de minimis" and not wilful. PDM contends that such a breach does not preclude a recovery for contract damages. This argument finds no support in either the law or the jury's answers to the special questions. "The law has long been settled in this Commonwealth, in relation to building contracts, that a contractor cannot recover on the contract itself without showing complete and strict performance of all its terms, but that, failing in such complete performance of the contract, he may recover on a

*quantum meruit*, if he can prove both substantial perform-ance of the contract and an endeavor on his part in good faith to perform fully, and the burden is upon him to prove both." (Emphasis in original). *Andre* v. *Maguire*, 305 Mass. 515, 516 (1940). See also *Hayeck Bldg. & Realty Co.* v. *Turcotte*, 361 Mass. 785, 789 (1972).

As explained in *J. A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 793 (1986): "Quantum meruit is a theory of *recovery*, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial perform-ance but not full completion of the contract. See generally 5 S. Williston, Contracts § 805 (3d ed. 1961)." (Emphasis in original.) This theory of recovery is particularly applicable in actions involving building contracts in order to avoid the harsh result of the long-established rule that there can be no recovery on a building contract in the absence of complete performance. See *Bowen* v. *Kimbell*, 203 Mass. 364, 370-371 (1909); *Divito* v. *Uto*, 253 Mass. 239, 242-243 (1925); *Hayeck Bldg. & Realty Co.* v. *Turcotte*, 361 Mass. at 789; *J. A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. at 796.

Neither instructions nor special questions were put to the jury concerning the issues whether PDM's breach was wilful or "de minimis." It does not appear that any of the parties lodged an objection to the judge's failure to include these is-sues in either her instructions or the special questions. See *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 573 (1986). Moreover, and contrary to PDM's argument, there is nothing in *Service Publications, supra*, which suggests that any finding of a "de minimis," nonwilful breach by PDM would entitle it to contract damages rather than quantum meruit recovery. Rather, a "de minimis" breach would not necessarily preclude a finding of substantial performance of the contract and, therefore, recovery in quantum meruit. See *Andre* v. *Maguire*, 305 Mass. at 516; *Albre Marble & Tile Co.* v. *Goverman*, 353 Mass. 546, 550 (1968); *J. A. Sullivan*

*Corp.* v. *Commonwealth*, 397 Mass. at 797. We see no error in the judge's refusal to enter judgment for PDM on its count for damages for breach of contract.

3. *PDM's quantum meruit recovery.* On their cross appeals, Suffolk and Seaboard argue that it cannot be said on any view of the evidence that PDM sustained its burden of showing that it had substantially performed its work and had tried in good faith to complete the contract. We see no error in the judge's denial of their motion for judgment notwithstanding the verdict on PDM's quantum meruit claim. There was evidence from which the jury could have found that some of PDM's faulty workmanship was due to the plans and information it received from Suffolk, that PDM remained on the job site trying to correct its work even after Suffolk's notice of termination of the contract, that prior to terminating the contract, Suffolk had paid $111,092 to PDM, and that it cost Suffolk $29,000 to redo some of the work which PDM had done. Further, and as noted by the judge in her memorandum accompanying the denial of the defendants' motion, it is implicit in the award of $29,000 to Suffolk that the jury found that PDM's breach occurred prior to Suffolk's termination of the contract.[2]

Because it was PDM's position at trial that its good faith intention to perform the contract fully was prevented by Suffolk's termination of the contract, the instructions and special questions put to the jury correctly focused upon PDM's substantial performance up to the time of any wrongful termination by Suffolk. "The fact that a plaintiff has been unjustifiably ordered off the job excuses him from proving substantial performance of the entire contract, as was held in *Frank Fitzgerald, Inc.* v. *Pacella Bros.*, 2 Mass. App. Ct. 240 (1974), but there is nothing in that case which suggests that a plaintiff is excused from proving substantial performance and an intention completely to perform up to the date that further performance is prevented by the termination." *C.C.*

---

[2]Suffolk makes no argument on appeal concerning the jury's determination of PDM's breach of contract or the damages awarded to Suffolk on account of that breach.

& *T. Constr. Co.* v. *Coleman Bros.*, 3 Mass. App. Ct. 372, 375 (1975).

In arguing that PDM did not, as matter of law, substantially perform the contract up to the time of the termination, the defendants have structured a formula which arguably demonstrates that a high percentage of PDM's work was poor.[3] Specifically declining to give decisive weight to "work completion percentages," the judge, instead, looked to the jury's finding of substantial completion by PDM, the evidence, and her jury instructions. Expressed as a percentage, the jury found that ninety-two percent of the work done by PDM was successfully completed.[4] Because it "was not beyond the province of a jury" to find that such a ratio constituted "substantial completion," the judge refused to set the verdict aside.

Moreover, there is nothing in the record appendix which reflects that the defendants raised, by their motions for a directed verdict, proposed jury instructions, or special questions, the right to have substantial performance established in terms of a percentage. See *Service Publications, Inc.* v. *Goverman*, 396 Mass. at 573; *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 34-36 (1991). The judge's conclusion that there was a reasonable basis for the jury's

---

[3]PDM had completed the first phase of its work in seven of the sixteen buildings and was performing the second phase in building eleven when the contract was terminated. On appeal, the defendants formulate the following: "The dollar amount of damages the jury awarded Suffolk for PDM's breach, $29,000, related to the evidence of the actual cost ($29,685) of ripping out and replacing PDM's defective second phase work at building 11. A comparison of the $29,000 of defective work to the $109,000 average per building cost for all of PDM's plumbing (total job cost of $1,743,668 . . . divided by 16) illustrates that PDM's poor workmanship constituted a substantial amount (27%) of the total work to be completed on building 11."

[4]In her instructions on the quantum meruit claim, the judge told the jury to reduce the amount of any quantum meruit recovery to which they might find PDM entitled by $111,092, the amount of payments previously made by Suffolk to PDM. The amount of the previous payments plus the jury's award, $248,160, was an implicit determination by them that PDM's labor and materials had a fair value of $359,252. The extrapolation of that value and the cost of the corrective work, $29,000, is a ninety-two percent success ratio.

finding on the quantum meruit claim is firmly supported by the evidence and the jury instructions.

After the entry of the original judgment, the defendants brought a motion seeking a new trial "with respect to all issues." The motion was accompanied by an affidavit from PDM's former controller and vice president of finance in which he states that he had been instructed to understate costs on a job-cost report which he had prepared in anticipation of the litigation and which was admitted in evidence. As explained in the affidavit, costs were deflated for the purpose of inflating PDM's claim for lost profits on the count for damages for breach of contract. The defendants argue on appeal from the denial of the motion that, because of PDM's "fraud, misrepresentation and chicanery," they are entitled to a new trial on the quantum meruit claim.

In denying the motion, the judge observed that the result of any "deletion of cost items from PDM's report would reduce its recovery under a quantum meruit theory." Aside from this observation, the judge found that the defendants had not shown any surprise, mistake, or excusable neglect in explanation of "why this claim could not have been raised and explored before or during trial." The defendants' answer, that the judge abused her discretion in expecting them "to depose all present and former management employees of PDM," requires no discussion.

4. *PDM's c. 93A claim.* Soon after the jury returned their verdicts, the judge took up PDM's numerous claims of unfair acts by Suffolk. The judge found for Suffolk on all but one: its demand that PDM execute a formal contract and obtain payment and performance bonds within two days, a weekend. Although the judge concluded that Suffolk would have the right to terminate the contract if PDM did not timely produce the bonds, she found that on the existing circumstances, created in part by Suffolk, "it would have been impossible for PDM to deliver the requisite bonds" within the time period set by Suffolk. Those circumstances were that the surety company with which PDM did business, United States Fidelity and Guaranty Co. (Fidelity), required an executed con-

tract before it would agree to provide any bonds. There was undisputed evidence that because the contract was executed five months after work had started, Fidelity "was certain to ask questions and review the contract very carefully."

The judge initially did not accept Suffolk's argument that, irrespective of its time demands, PDM's financial difficulties presented an independent and insurmountable obstacle to its providing the bond to Suffolk. She found that the "evidence strongly suggested" that PDM would not have had a problem in obtaining bonds from Fidelity had the contract been timely executed in the fall of 1987, or at least by the end of that year. Moreover, even if Fidelity would not have provided the bond in March, 1988, "it may well have been possible for PDM to obtain bonds from another company" had more time been allowed by Suffolk. Concluding that Suffolk's time frame was commerically unreasonable, oppressive, and a breach of its implied contractual covenant of good faith and fair dealing, the judge awarded PDM damages (the contract price less deductions for its cost of performance, its quantum meruit recovery, the amount of previous payments by Suffolk, and the jury's award to Suffolk for the cost of redoing some of PDM's work), counsel fees and costs.

Suffolk responded to the judge's decision with a motion to vacate the award and amend the findings on the ground, among others, that PDM had failed to prove that it could have obtained the bond within a reasonable time after the expiration of the deadline imposed by Suffolk. Because the judge had decided the c. 93A claim soon after the jury's verdicts and without the benefit of a trial transcript, she determined that it would be helpful to schedule an additional hearing "where each party can present its view on what the evidence in the record shows." Subsequent to that hearing and after having been provided with pertinent portions of the trial transcript, the judge concluded that PDM had not "established the necessary causal link between the lost profits and related damages it claims and the unfair or deceptive acts of Suffolk." She vacated her damage award, leaving counsel fees and costs in place, and entered an amended

judgment from which PDM, Suffolk, and Seaboard Surety Company appeal.

In vacating her previous award, the judge relied upon the following evidence. Fidelity had declined to write three bonds for other PDM projects in December, 1987. It reversed this decision only after PDM's principal agreed to provide an approved personal financial statement. This statement was made a requirement for all further bond applications from PDM because the capital by which it was meeting its obligations and performing its contract work was being provided by contributions and loans from PDM's principal.

PDM never applied to Fidelity, its sole surety since 1973, for the bond on Suffolk's project. The judge identified early May, 1988, as the period during which PDM would have been seeking the Suffolk bond had it been given a reasonable opportunity to do so. About this same time, however, Fidelity had declined to bond PDM on another project because of the principal's failure to provide the required personal financial statement. Moreover, it appeared to Fidelity that PDM was having problems on several of its projects. The judge concluded that the evidence was insufficient to show that PDM could have obtained the bond from Fidelity even had Suffolk given PDM a reasonable time in which to do so.

Further, the judge was not persuaded on the evidence that PDM could have obtained the bond from alternative sources. After Fidelity refused PDM's request for bonds in May, PDM's bonding agent attempted, without success, to secure other bonds from three or four different surety companies. After Suffolk terminated its contract, PDM did not place any bonds until October. At that time, a new agency gave PDM bonding authority in a limited amount. These bonds, provided seven months after Suffolk's demand in March, were in amounts smaller than that required for Suffolk's project. PDM made no showing that its limited ability to place bonds was due to its relationship with Suffolk. The judge concluded that PDM failed to show that it could have obtained the necessary bonds from Fidelity or another source within a reasonable amount of time.

PDM relies upon the judge's original decision, wherein she concluded that PDM might have been able to obtain the bonds but for Suffolk's imposition of an unfair time restraint, and argues that her subsequent conclusion is based upon an erroneous placement of the burden of proof on PDM to show that it would have been able to obtain the bonds within a reasonable period of time. PDM claims that the judge's conclusion may well have been different had she correctly placed the "burden on Suffolk to prove the negative."

We begin with the proposition that "[i]n the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery." *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 730 (1989), citing *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 (1983), and *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 800 (1976). The only act by Suffolk which the judge found to be unfair was its demand that PDM obtain the required bond over a weekend, rather than within a reasonable period of time. Having received the value of its labor and materials on its quantum meruit count, PDM sought to recover its lost contract profits on its c. 93A claim.

PDM does not, and cannot, quarrel with the judge's premise that, because of the size of the Arboretum project, failure of PDM to procure the bond within a reasonable time after executing the formal contract would have entitled Suffolk to terminate PDM's services on the project. In view of the nature of the act found by the judge to be unfair, we see no error in her conclusion that PDM's ability to obtain a bond within a reasonable period of time was material to its right to recover damages in the amount of its lost contract profits under c. 93A. In these circumstances, we think the judge correctly placed the burden upon PDM to show that it could have met the conditions of the contract, rather than requiring Suffolk to prove that PDM lacked the ability to obtain the bond. Cf. *Kanavos* v. *Hancock Bank & Trust Co.*, 395 Mass. 199, 203-205 (1985). Finding no error in the judge's conclusion that PDM did not sustain its burden of

proof, we need not discuss PDM's claim that it was entitled to multiple damages.

There is no argument by Suffolk on its cross appeal that the "absence of an entitlement to money damages precluded an award of attorneys' fees and costs under c. 93A, and we do not consider that issue." *Rex Lumber Co.* v. *Acton Block Co.*, 29 Mass. App. Ct. 510, 520 (1990), citing *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717-718 (1989). Suffolk's only allegation is that it was prejudiced by PDM's failure to plead expressly the specific act found by the judge to be unfair, the imposition of a commercially oppressive time restraint in which to secure the required bond. As explained by the judge in considering this contention of "unfair surprise" on Suffolk's motion to amend her original findings, the claim of prejudice had substance only in respect to its ability to meet PDM's evidence of lost profits. Potential liability under c. 93A by reason of the circumstances of the termination of the contract, however, was known from the outset. We agree with the judge that any possible prejudice to Suffolk was cured by her ultimate conclusion on damages.

*Amended judgment affirmed.*