In re BRADLEES STORES,
INC., et al., Debtors.

Leading Manufacturer Pte.
Ltd., et al., Appellants,

v.

Bradlees Stores, Inc., et al., Appellees.

No. 04 Civ. 0599(RWS).

United States District Court,
S.D. New York.

Aug. 27, 2004.

Robert E. Michael & Associates, By Robert E. Michael, Of Counsel, New York, for Appellants.

Cadwalader, Wickersham & Taft, By Adam C. Rogoff, John H. Bae, Nathan A. Haynes, Of Counsel, New York, for Appellees.

## OPINION

SWEET, District Judge.

Easy & Joytex Corporation ("E & J"), Leading Manufacturer Pte. Ltd. ("Leading"), Lekim Textile Industries Pte. Ltd. ("Lekim") and Maxlin Garments Sdn. Bhd. ("Maxlin") (collectively the "Appellants") have appealed the memorandum decision and order of the United States Bankruptcy Court (Lifland, B.J.), entered November 13, 2003, as amended by errata order entered November 17, 2003, granting the motion for summary judgment of Bradlees Stores, Inc., Bradlees, Inc. and New Horizons of Yonkers, Inc. (collectively, "Bradlees" or the "Debtor"), on their objection to the Appellants claims and expunging those claims.

For the reasons set forth below, the decision is vacated and remanded.

### The Parties

Bradlees operated 105 discount stores in seven northeastern states, offering, among other things, apparel and accessories, home products and convenience goods. On December 26, 2000, Bradlees commenced a case under Chapter 11 of the Bankruptcy Code (the "petition") and have continued to wind-down their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Appellants were among the foreign manufacturers with whom the Debtors

regularly contracted for the purchase of clothing through Li & Fung (Trading) Limited ("Li & Fung"), which acted as an intermediary between the manufacturers and Debtors.

### Prior Proceedings

After the initiation of the bankruptcy proceedings, on December 18, 2001, the Bankruptcy Court entered an order confirming the Debtors' third amended joint plan of liquidation, together with the official committee of unsecured creditors, under Chapter 11 of the Bankruptcy Code, dated November 7, 2001 (the "Plan"). The effective date of the Plan was December 28, 2001.

Leading filed its claim on April 27, 2001, and amended the claim on October 17, 2001. The claim is in the aggregate amount of $855,371.78, consisting of a general, unsecured claim in the amount of $217,881.60 and an unsecured priority claim in the amount of $637,490.18 based on goods that were allegedly ordered. Objections to the claim were filed and discovery proceeded.

Lekim filed its claim on April 30, 2001, and amended the claim on October 17, 2001. The claim is in the aggregate amount of $1,117,912.00, which consists of a general, unsecured claim in the amount of $117,561.60 and an unsecured priority claim in the amount of $1,000,350.40 based on goods that were allegedly ordered by the Debtors and partially based on goods that were allegedly ordered and actually shipped to Bradlees. Objections to the Lekim claim were filed and discovery proceeded.

E & J filed its claim on April 16, 2001, and amended the claim on October 17, 2001. The claim is in the amount of $708,715.90 based on goods that were allegedly ordered by the Debtors. Objections were filed and discovery proceeded.

Maxlin filed its claim on April 27, 2001, and amended the claim on October 17, 2001. The claim is in the aggregate amount of $649,450.68, which consists of a general, unsecured claim in the amount of $106,922.80, and an unsecured priority claim in the amount of $542,527.88 based on goods that were allegedly ordered by Bradlees and partially based on goods that were ordered and actually shipped to the Debtors. Objections were filed and discovery proceeded.

In December 2001, the Appellants, with the exception of E & J, sought administrative treatment of their claims based upon Bradlees' purported post-petition breach of pre-petition contracts. The Bankruptcy Court reclassified all of the Appellants' claims as general unsecured claims. The Appellants appealed, and both this Court and the Second Circuit Court of Appeals affirmed Judge Lifland's decision. *In re Bradlees Stores, Inc.*, 02 Civ. 896, 2003 WL 76990 (S.D.N.Y. Jan.9, 2003), *aff'd without opinion*, 78 Fed.Appx. 166, 2003 WL 22367525 (2d Cir. Oct.17, 2003).

After discovery was completed, Bradlees moved for summary judgment dismissing the claims on the basis of their objections.

On November 5, 2003, after the motion was fully briefed, argued and *sub judice*, the Appellants sent a letter to the Bankruptcy Court on behalf of Appellant Leading, attaching an affidavit on behalf of Leading, alleging that Leading had located additional documentary material, in particular approval sample certificates in support of a portion of its claim, and that Leading was shipping copies of them from Singapore to New York. The Bankruptcy Court disregarded these submissions on the grounds that the submissions constituted inexcusable circumvention of the Federal Rules of Civil Procedure and the Bankruptcy Court's August 29, 2003 discovery order, parties opposing summary

judgment are required to place all their evidence before the court, and the record on the motion was closed; and the "putative reworked submissions" were offered without the opportunity for further examination by the Debtors on matters previously covered in depositions.

The Decision entered November 13, 2003, as amended by errata order entered November 17, 2003, granted Bradlees' summary judgment on its objections seeking entry of an order, pursuant to section 502 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), expunging the claims filed by Leading, Lekim and E & J, and partial summary judgment with respect to a portion of the claim filed by Maxlin.

Appeal was taken to this Court on January 26, 2004. The Appellants' claims represent the entirety of the unresolved claims in these bankruptcy cases, and their claims have been fully reserved against by Bradlees. Once the Appellants' claims are resolved, the Debtors plan to make a final distribution to their legitimate creditors.

Argument was heard on the appeal on April 7, 2004, at which time the appeal was fully submitted.

### The Transaction At Issue

At the outset, a representative of Bradlees traveled abroad and met with manufacturers to examine the manufacturers' operations and products, to price clothing and obtain other information or ideas relative to Bradlees' clothing needs. Bradlees' representative also met with Li & Fung as an intermediary to pair the buyer with an appropriate manufacturer and to facilitate the transactions.

Bradlees' representative returned to the U.S. and in coordination with purchasing and other departments, determined Brad-lees' needs and then prepared a product specification memorandum (the "Specification Memo") describing the clothing Bradlees was interested in purchasing. The Specification Memo was forwarded to the appropriate manufacturer through Li & Fung.

After Bradlees issued a Specification Memo, Li & Fung would issue a Placement Memorandum to the Appellants stating the amount and cost of the garments. The Placement Memorandum stated that it is subject to Bradlees' approval of samples and provided for a date certain for shipment of the goods.

Bradlees and the manufacturers would engage in two to four or more stages of sampling, depending on Bradlees' comments, requirements and quality control testing. In the event the samples failed to meet Bradlees' expectations or specifications in any regard, Bradlees ceased negotiations and terminated the proposed transaction. If the proposed sample completed the process of testing, comment and analysis, Bradlees' Vendor Compliance Department would issue an Approval Sample Certificate. Thereafter, the goods were to be shipped by the "Ship By" date indicated in the Placement Memorandum.

In the normal course, Bradlees would post a letter of credit for the benefit of Li & Fung, who would thereafter transfer the letter of credit to the respective Appellants. In order to draw on the letter of credit, the Appellants were required to present a number of documents, including a copy of an applicable Approval Sample Certificate.

Prior to the petition, the Appellant and Bradlees engaged in a series of transactions for the sale of finished goods to Bradlees. The claims at issue resulted from Placement Memoranda issued by Li & Fung on behalf of Bradlees.

The only Placement Memorandum in the record required Maxlin to ship the merchandise by November 20, 2000. (Appendix p. 44).

On or about December 18, 2000, approximately one week before the petition was filed, Li & Fung sent a fax to E & J, advising on Bradlees' behalf that Bradlees was in great financial difficulty and that E & J should begin the process of finding other purchasers for the goods manufactured for Bradlees. E & J understood the fax to mean that its contracts with Bradlees had been unilaterally cancelled.

Li & Fung sent cancellation notices to Leading, Lekim, and Maxlin on or about January 29, 2001, April, 27, 2001, and April 24, 2001, respectively, stating that the cancellation was due to the liquidation of Bradlees.

No Approval Sample Certificates relating to these transactions were produced during discovery except for Maxlin which produced Approval Sample Certificates relating to goods in the amount of $305,400. That portion of the Maxlin claim was approved. Each of the Appellants, however, submitted affidavits stating that all conditions of the contracts had been fulfilled up until the date the contracts were cancelled.

As set forth above, Leading submitted an affidavit, post-discovery and after argument in the Bankruptcy Court, stating that it had found Approval Sample Certificates relating to a majority of its claims.

### The Standard of Review

■ A bankruptcy court's findings of fact are reviewed under a clearly erroneous standard. *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 01 Civ. 10169, 2002 WL 449856, at *2 (S.D.N.Y. Mar.22, 2002), *aff'd*, 330 F.3d 111, 119 (2d Cir.2003); *Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.)*, 117 B.R. 64, 66 (Bankr.

S.D.N.Y.1990). Conclusions of law reached by a bankruptcy court are reviewed *de novo*. See *Gulf States Exploration Co. v. Manville Forest Prods. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir.1990); *Lomas*, 117 B.R. at 66.

### *The Applicable Law*

■ State law governs the nature and amount of claims under Title 11:

Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. See *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161–162, 67 S.Ct. 237, 91 L.Ed. 162 (1946). The "basic federal rule" in bankruptcy is that state law governs the substance of claims, *Butner, supra*, at 57, 99 S.Ct. 914, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law," 440 U.S. at 54, 99 S.Ct. 914 (footnote omitted).

*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 1953, 147 L.Ed.2d 13 (2000).

The state substantive law governing the sale of goods, as in this case, is Article 2 of the Uniform Commercial Code ("UCC"). See *e.g., AEL Industries, Inc. v. Loral Fairchild Corp.*, 882 F.Supp. 1477, 1485 n. 6 (E.D.Pa.1995) (applying New York law). UCC § 2–102 provides, in pertinent part: "Unless the context otherwise requires, this Article applies to transactions in goods." UCC § 2–105 defines "goods" in pertinent part as:

all things (including specially manufactured goods) which are movable at the time of identification to the contract for

sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.

*See also Architectronics, Inc. v. Control Systems, Inc.*, 935 F.Supp. 425, 432 (S.D.N.Y.1996). Bradlees has not disputed that the basis for the claims was (i) goods sold and not paid for, and (ii) damages arising from the cancellation of contracts for the sale of goods. As noted in the Decision (D–2, pp. 2–3):

> Prior to the Petition Date, [Appellants] and [Appellees'] agent in the Far East, [Li & Fung], engaged in a series of negotiations for the sale to [Appellees] of finished goods. The negotiations resulted in purchase orders or "Placement Memoranda." Upon filing their bankruptcy cases, the [Appellees] cancelled the Placement Memoranda.... The Claims were for obligations arising from those Placement Memoranda that were cancelled by [Appellees] after the Petition Date.

According to the Appellants, the substantive law that applies to the issue of the validity and amount of the claims is Article 2 of the UCC.

Bradlees maintained a "Vendor Logistics Program" that established its requirements for contracting with manufacturers and the issuance and acceptance of purchase orders for clothing or other merchandise. In accordance with the Vendor Logistics Program, the rights of the debtors and manufacturers are "governed by the laws of the Commonwealth of Massachusetts." Vendor Logistics Program ¶ 16. Each of the Appellants, however, have submitted affidavits stating that they were never advised of the Vendor Logistics Program, nor was a copy of its requirements sent to them. Nevertheless, both Bradlees and the Appellants have relied upon state law, most particularly that of Massachusetts. The Appellants

have done so because "the UCC of the States of Massachusetts and New York appear to be identical for all relevant purposes..." Appellants' Reply Brief, at 2 n. 2.

### *There is a Material Question of Fact Whether Bradlees' Anticipatorily Breached the Contracts*

The Appellants' principal argument for reversal was the failure of the Bankruptcy Court to recognize that Bradlees had anticipatorily breached the contracts established by the Placement Memoranda. This issue was presented at the hearing of the summary judgment below in a somewhat abbreviated fashion and was disposed of in a footnote of the Decision.

> Remarkably, Claimants' counsel argued that Debtors' cancellation was actually an anticipatory repudiation triggering section 2–610 of the Uniform Commercial Code and therefore, the Claimants were relieved of their duties to fulfill the conditions precedent. The Claimants have not offered any evidence to support their theory of an anticipatory breach. Moreover, this argument does not lie with the Claimants' avowal that they fully performed their obligations under the Placement Memoranda. If, as they claim, they satisfied the conditions precedent before the Debtors cancelled, then an anticipatory breach is not possible.

D–2, p. 7, n. 1.

While this principal issue raised on appeal by the Appellants was not presented in the same detail to the Bankruptcy Court in the opposition to Bradlees' motion for summary judgment, the argument that Bradlees had anticipatorily breached its contracts had been made to the Bankruptcy Court from at least December 2001, as shown by motion papers submitted by Appellants.

The Decision relied on the failure of the Appellants to establish a requirement for payment, namely, the Approval Sample Certificates, and viewed that requirement as a condition precedent.

■ The Appellants correctly note, however, the distinction between the formation of a contract and the requirements to establish liability under the contract. *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995) ("Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself."); *A Treatise on the Law of Contracts by Samuel Williston* (4th Ed.), Richard A. Lord, ed., § 38:4, at 381 (hereafter, *Williston*) ("The fact that no duty of performance on either side can arise until the happening of the condition does not ... make the validity of the contract depend upon its happening."). Any failure of the Appellants to submit Approval Sample Certificates does not, therefore, vitiate the validity of the contracts.

The Appellants do not dispute that the contracts at issue evidenced by the Placement Memoranda, required certain steps to be taken by Appellants in order for them to be paid. The most important step, of course, was the delivery of conforming goods to Appellees' agents as specified in the contracts and Appellants do not dispute that intermediate performance criteria are also set out in the Placement Memoranda.

Appellants argue, however, that the requirements that needed to be fulfilled in order for Bradlees to have an obligation to pay are not the same as the requirements that Appellants had at the time of the cancellation of the contract. The Appellants have argued that they have fulfilled the latter. It was therefore incorrect of the Bankruptcy Court to state Appellants were claiming "that they fully performed their obligations under the Placement Memoranda." D–2, p. 7, n. 1.

■ Uniform Commercial Code § 2–610, entitled "Anticipatory Repudiation," in relevant part, provides:

When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

\* \* \* \* \* \*

(b) resort to any remedy for breach ...; and

(c) in either case suspend his own performance or proceed in accordance with the provisions of this Article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 2–704).

General Laws of Massachusetts, Chapter 106, Section 2–610. Outside of the context of § 2–610, "Massachusetts has not generally recognized the doctrine of anticipatory repudiation..." *Cavanagh v. Cavanagh*, 598 N.E.2d 677, 679, 33 Mass.App.Ct. 240, 244 (1992).

The critical issue between the two parties is whether the Appellants had fulfilled the conditions precedent required under the contracts at the time the contracts were cancelled. The Bankruptcy Court elided the difference between conditions precedent to the Appellants being paid under the contract and conditions precedent at the time of cancellation. *See* D–2, p. 7. It therefore did not consider that the failure to produce an Approval Sample Certificate or other evidence of sampling may not necessarily indicate the nonper-

formance of a condition precedent which the Appellants were obligated to perform before the contracts were cancelled.

 Bradlees' cancellation of the contracts excuses any further performance on the part of the Appellants if the Appellants have fulfilled all conditions precedents up to that point:

> Where one party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived and before a default justifying the repudiation has occurred, the other party is relieved from performance on his or her side. In other words, an anticipatory repudiation of contractual duties by one party to the contract excuses performance by the other.

*Williston,* § 39:37, at 663; *see also The Eliza Lines,* 199 U.S. 119, 129, 26 S.Ct. 8, 50 L.Ed. 115 (1905) ("By the general principles of contract, an open cessation of performance, with the intent to do no more, even if justified, excuses the other party from further performance on his side."); *Fortune v. National Cash Register Co.,* 373 Mass. 96, 107, 364 N.E.2d 1251 (1977) ("Where [one party] repudiates or nullifies procedures established by the contract, the [other party] is excused from performance of the conditions imposed on him."); UCC § 2–610(c) (when anticipatory repudiation occurs "the aggrieved party may ... suspend his own performance..."); Restatement (Second) of Contracts § 253(2). The fact that the contract may contain conditions precedent the performance of which post-date the cancellation does not alter this proposition. *See*

*Williston,* § 39:39 ("if before the time for the performance of a condition by a promisee, the promisor leads the promisee to stop performance by personally manifesting an intention not to perform, even though the condition is fulfilled, 'it is not necessary for the first to go further and do the nugatory act.'") (quoting *Jones v. Barkley,* (1781) 2 Doug (Eng) 684).

 An anticipatory breach has not occurred, however, if the Appellants "failed to satisfy one or more conditions provided in the [contract], in which case [Bradlees] never became obligated to close the transaction." *Rus, Inc. v. Bay Indus., Inc.,* 322 F.Supp.2d 302, 309 (S.D.N.Y. 2003). Appellants argue, without supporting authority, that Bradlees was required to have stated at the time of cancellation that the failure to fulfill conditions precedent was the cause of cancellation. They argue that because Bradlees gave no reason for cancellation (other than its financial difficulties), an anticipatory repudiation can be found on those facts alone. It is sufficient, however, in order to demonstrate that an anticipatory breach did not occur, to show the failure of applicable conditions precedent, whether or not that failure was stated as a reason by Bradlees, or indeed whether the alleged failure *was* the reason for cancellation. The failure of a condition precedent demonstrates that the non-repudiating party is not "ready, able and willing to perform" under the contract, *Vander Realty Co. v. Gabriel,* 334 Mass. 267, 271, 134 N.E.2d 901, 903 (Mass. 1956), which is a necessary element of a cause of action for anticipatory repudiation.[1]

---

**1.** The Appellants argue, incorrectly, that the language of § 2–610 exempts them from the "ready, able and willing" requirement. Although the non-repudiating party may suspend performance following cancellation, the Appellants are required to show that perform-

ance would have happened absent cancellation. *See Decor by Nikkei Intern., Inc. v. Federal Republic of Nigeria,* 497 F.Supp. 893, 908 (S.D.N.Y.1980), *aff'd sub nom. Texas Trading & Mill. Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981) (holding that after

The burden to establish that an anticipatory breach occurred is on the party asserting it. *PDM Mechanical Contractors, Inc. v. Suffolk Const. Co., Inc.*, 35 Mass.App.Ct. 228, 618 N.E.2d 72, 77 (1993) ("the judge correctly placed the burden upon [the nonbreaching party] to show that it could have met the conditions of the contract, rather than requiring [the breaching party] to prove that [the nonbreaching party] lacked the ability to [perform]"); *In re Friday Afternoon, Inc.*, 73 B.R. 940, 943 (Bankr.D.Mass.1987) (nonbreaching party "has the burden of showing that it was ready willing and able to" perform). As an essential element of the doctrine, the party spurned by an anticipatory breach must demonstrate by as preponderance of the evidence that he had the ability to tender performance when due. *Reprosystem, B.V. v. SCM Corp.*, 522 F.Supp. 1257, 1278 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds*, 727 F.2d 257 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). "[U]nder both common law and the UCC, the spurned [party's] right of action for anticipatory breach depends on his shouldering the burden of demonstrating his readiness, willingness and ability to tender performance when due ..." *Id.; see also Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F.Supp.2d 373, 377 (S.D.N.Y.2004) (holding that under § 2–610 and New York law, "the party asserting the anticipatory repudiation bears the burden of persuasion.").

It is not disputed that valid contracts were formed by the Placement Memoranda,[2] and the Bankruptcy Court found that "[u]pon filing their bankruptcy cases, the debtors cancelled the Placement Memoranda." D–2, at 2. *See also In re Chateaugay Corp.*, 104 B.R. 637, 644 (S.D.N.Y. 1989) ("The Uniform Commercial Code, in comment 1 to section 2–610, 'appears to retain the common law requirement that a statement of intention not to perform must be positive and unequivocal.' ") (quoting J. White & R. Summers, *Uniform Commercial Code* 239 (3d ed.1988)). Nor is there a question that the requirement of § 2–610 that the alleged repudiation "substantially impair the value of the contract to the other" is fulfilled, as the contracts were cancelled in their entirety, resulting in claims totaling nearly three million dollars after mitigation.

Bradlees argues that the Appellants have failed to meet their burden of establishing anticipatory repudiation because Appellants did not present any evidence "in the Bankruptcy Court to establish that [Bradlees'] purported breach occurred prior to the time when Appellants were required to obtain approvals of samples." Bradlees' Brief at 5. In response, the Appellants argue that either samples were not required to be ap-

the enactment of § 2–610, "New York courts appear to have continued to require proof of readiness, willingness, and ability to perform.") (citing *Ufitec, S.A. v. Trade Bank & Trust Co.*, 21 A.D.2d 187, 249 N.Y.S.2d 557 (1st Dep't 1964), *aff'd*, 16 N.Y.2d 698, 261 N.Y.S.2d 893, 209 N.E.2d 551 (1965)). Massachusetts caselaw does not address this issue.

2. According to the Decision, the Appellants also argued before the Bankruptcy Court that "confirmed worksheets" negotiated between the Appellants, Li & Fung and, "occasionally,

a representative of [Bradlees]" were "binding upon both parties without any other contracts or instruments being signed." D–2, pp. 4–5. The Bankruptcy Court dismissed this argument without discussion, holding that the Placement Memorandum "is the underlying contract upon which the Claimants have based their claims." *Id.* at p. 7. The Appellants have not contested this holding on appeal, apparently conceding that the only valid contracts are those formed by the issuance of Placement Memoranda.

proved before cancellation took place or that samples had been submitted and approved. Documentary evidence of the approval of samples was not submitted to the Bankruptcy Court until after the summary judgment motion was *sub judice*.

The record on appeal does not permit a clear determination as to when samples were required to be approved by Bradlees for each of the contracts that are the subject of Appellants' claims. The one Placement Memorandum in the record is dated September 13, 2000, and requires Maxlin to ship its merchandise by November 20, 2000. Bradlees did not cancel its contracts with Maxlin until April 2001. Because the approval of samples would necessarily precede the shipment date, such approval would be a condition precedent for the contract evidenced by this Memorandum. For such a contract, and any other contract with a required shipping date which pre-dates the relevant notice of cancellation, the Appellants are required to provide evidence of their compliance with the stated conditions. Although the Appellants state that they have "provided the actual correspondence . . . establishing the contracts (the Placement Memoranda) . . ." Appellants' Reply Brief at 3, the record on appeal contains only the one Placement Memorandum negotiated between Maxlin and Bradlees.

Bradlees also argues that the testimonial evidence submitted by Maxlin and Lekim is insufficient to establish that samples were submitted or approved, and that Leading and E & J have not even attempted to submit such testimony. It is true that in the depositions of the representatives of Maxlin and Lekim, there is no statement that the samples of the goods which are the subjective of their respective claims were actually submitted or approved. But as noted above, it is also not clear from the record that the submission or approval of samples was required on all relevant contracts at the time of cancellation.

In the absence of evidence in the record on appeal of when samples were required to be submitted and/or approved, or when an Approval Sample Certificate should have issued, it is impossible to tell when any of the conditions precedent to the contract became effective, or if the Appellants were required to show their willingness to perform under the contract by the submission of samples. Construing the lack of evidence in Appellants' favor, as is required on a summary judgment motion by Bradlees, there is a genuine issue of material fact as to whether Appellants were required to have fulfilled any conditions precedent at the time of cancellation. The decision of the Bankruptcy Court is accordingly vacated and remanded for a determination as to when sample submission or approval was required in relation to the date the contracts were cancelled.

Although the language of the Placement Memoranda contains no specific date on which approval of samples is required, approval must occur at least by the shipment date listed on each Memorandum, and likely somewhat earlier. Even if the submission or approval of samples is not an express or even a constructive condition precedent, the failure to submit samples or to have them approved at the time of the cancellation may constitute evidence of an unwillingness or unreadiness to perform under the contract.

Because the motion is remanded for further proceedings, it is not necessary to determine whether the Bankruptcy Court properly ruled that the Appellants could not supplement the record after the motion was *sub judice*.

The Bankruptcy Court held that requirements in letters of credit issued by a

third party bank for the account of Bradlees to their agent Li & Fung and transferred to Claimants applied to obligations of the parties under the contracts of sale between Bradlees and Appellants. The most important of these obligations was the presentation of an Approval Sample Certificate. The Bankruptcy Court further held that submission of the Approval Sample Certificates to Li & Fung was a condition precedent under the contracts between Appellants and Bradlees, and that the Appellants' failure to produce any certificates was further proof that the Appellants had failed to fulfill the condition.

As discussed above, the fact that the certificates may have been conditions precedent to Bradlees' obligation to pay the Appellants does not mean that the submission of the certificates was a condition precedent when the contracts were cancelled. Apart from the issue of how the requirements in the Letter of Credit were interpreted, however, it was not improper for the Bankruptcy Court to have considered the Letters of Credit as setting out the requirements in order for the Appellants to be paid. Although, as Appellants argue, the Letter of Credit may be a separate contract from the Placement Memorandum, they may be read together as a single agreement "[w]here two or more contracts are part of a single transaction and appear in combination ... to constitute the entire understanding of the parties..." *Kittredge Equip. Co., Inc. v. Ted's Victorian Pub & Restaurant, LLC,* No. 01WAD002, 2001 WL 1012205, at *2 (Mass.App.Div. Aug.28, 2001).

The Appellants argue that the UCC and the "Uniform Customs and Practice for Documentary Credits, 1993 Revision, ICC Publication No. 500," International Chamber of Commerce, 1993 (the "UCP"), to which the letters of credit are subject, both require that letters of credit be treated independently from the underlying contract because "[a]n issuer [bank of a letter of credit] is not responsible for ... (1) the performance or nonperformance of the underlying contract, arrangement, or transaction." UCC § 5–108(f); *see also* UCC § 5–103; UCP Articles 3a, 4.

However, the UCC and UCP provisions cited by the Appellants merely stand for the proposition that, as a general rule, the issuer must honor a letter of credit when presented with the proper drawing documents regardless of any disputes that may exist with respect to the underlying agreement. "[T]he doctrine of independence protects only the distribution of the proceeds of the letter of credit. It prohibits an attack on the issuing bank's distribution to the beneficiary and does not address claims respecting the underlying contract." *In re Graham Square, Inc.,* 126 F.3d 823, 827–28 (6th Cir.1997). The Appellants' invocation of the doctrine of independence is inapposite here as the dispute in this litigation relates not to distribution of the proceeds of any of the Letters of Credit but to the underlying requirements which Appellants must fulfill for Bradlees to be obligated to pay.

Because the Approval Sample Certificates are provided to the Appellants by Bradlees, however, the failure to by Bradlees to issue a certificate, or to acknowledge the issuance of a certificate, when all other requirements for performance under the contract have been fulfilled by the Appellants shall not prevent the establishment of a claim for anticipatory breach. *See Kooleraire Service & Installation Corp. v. Board of Ed. of City of New York,* 28 N.Y.2d 101, 106, 268 N.E.2d 782, 784, 320 N.Y.S.2d 46, 48 (1971) ("The general rule is, as it has been frequently stated, that a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrat-

ed or prevented the occurrence of the condition."); Restatement (Second) of Contracts § 245.

*Conclusion*

For the reasons set forth above, the decision of the Bankruptcy Court is vacated and remanded for a determination as to when the submission or approval of samples listed in the Placement Memoranda was required in relation to the date the contracts were cancelled.

It is so ordered.