# United States Court of Appeals
## For the First Circuit

Nos. 02-1040, 02-1588

UNITED STATES STEEL, a/k/a USX CORPORATION,

Plaintiff, Appellant,

v.

M. DEMATTEO CONSTRUCTION CO. and M. DEMATTEO CONSTRUCTION
CO./FLATIRON CONSTRUCTORS, a JOINT VENTURE,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge
and Lipez, Circuit Judge.

Marc Redlich, with whom Merle Ruth Hass, Howard Burger, and
Berman, Paley, Goldstein, & Kannry, L.L.P., were on brief for
appellant.
Hugh J. Gorman, III, with whom Joel Lewin, Michael D. Healan
and Hinckley, Allen & Snyder, L.L.P., were on brief for appellees.

December 30, 2002

**LIPEZ**, **Circuit Judge**. This case requires us to consider the rights, if any, of a subcontractor who did not substantially perform under his contract, to recover payment from a general contractor for work performed by the subcontractor who abandoned the job because of financial problems which soon led to bankruptcy proceedings. The case is brought by United States Steel ("USS"),[1] a secured creditor of the bankrupt subcontractor, Cyclone, Inc. ("Cyclone"). USS seeks to recover from the general contractor, M. DeMatteo Construction Co., and M. DeMatteo Construction Co. and Flatiron Constructors, a Joint Venture (collectively "DeMatteo"), all accounts receivable due the subcontractor. The district court entered summary judgment for DeMatteo on the ground that, as a matter of well-established Massachusetts law, the subcontractor is not entitled to any recovery under the contract at issue.[2] Though our analysis differs from that of the district court, we affirm.

## I.

DeMatteo is the general contractor at various public construction projects associated with the "Big Dig," a massive

---

[1]Plaintiff, formerly known as USX Corporation, changed its name to United States Steel, L.L.C. in August 2001 and will be referred to herein as such.

[2]In this instance, the district judge accepted and adopted the detailed report and recommendation of a magistrate judge. In the interest of simplicity, we do not distinguish between the two judicial officers. Rather, we refer to the determinations below as those of the district court.

undertaking that will submerge a section of interstate highway below the streets of Boston. Between September 1996 and October 1999, DeMatteo entered into three separate contracts with Cyclone, whereby Cyclone was to provide and install temporary and permanent fencing at construction sites. On or about October 8, 1999, Cyclone ceased its operations and stopped working on the projects. On December 3, 1999, Cyclone filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Maryland, during which proceeding USS was acknowledged as a secured creditor and authorized to collect accounts receivable due Cyclone.

On April 4, 2001, USS brought this lawsuit in an attempt to collect amounts it believes may be due Cyclone under the contracts between Cyclone and DeMatteo. USS does not dispute that Cyclone had not substantially completed its work under the contracts when it terminated its operations. However, it contends that under the terms of the contracts, if the costs to DeMatteo of completion were less than the amount by which DeMatteo was enriched by Cyclone's work performed and materials supplied, then USS, as Cyclone's secured creditor, is entitled to the balance.[3]

On June 8, 2001, DeMatteo moved for summary judgment. USS opposed this motion and filed two motions of its own, one pursuant to Fed. R. Civ. P. 56(f), seeking additional discovery,

---

[3]The details of the work done, including the amounts paid or owing Cyclone, are unknown to USS.

and the second seeking certification to the Supreme Judicial Court of Massachusetts of several questions of Massachusetts law. The district court granted summary judgment for DeMatteo on November 28, 2001, holding that a fair reading of the contract provisions is consistent with Massachusetts common law which prohibits recovery for the subcontractor under the contract or under a theory of quantum meruit absent substantial performance. The court denied the Fed. R. Civ. P. 56(f) Motion for Additional Discovery and the request for certification, and dismissed the case. On December 28, 2001, USS filed a timely notice of appeal. Thereafter, on March 26, 2002, USS filed a Fed. R. Civ. P. 60(b) Motion for Relief from Judgment. The district court denied the Rule 60(b) Motion on May 13, 2002, and USS's second appeal followed. On May 21, 2002, we entered an order consolidating these appeals for briefing and argument.

## II.

We review the district court's grant of summary judgment for DeMatteo de novo, examining the record in the light most favorable to USS and drawing all reasonable inferences in its favor. We affirm the district court's decision only if "there is no genuine issue of material fact" and DeMatteo "is entitled to judgment as a matter of law." Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)(quoting Fed. R. Civ. P. 56(c)). Here we focus on the contracts between Cyclone and

-4-

DeMatteo to determine the rights accruing to each party in case of abandonment of work by the subcontractor without substantial performance.

It is well established under Massachusetts law that a contractor "cannot recover on the contract itself without showing complete and strict performance of all its terms." Peabody N.E., Inc. v. Town of Marshfield, 689 N.E.2d 774, 779 (Mass. 1998) (quoting Andre v. Maguire, 26 N.E.2d 347 (Mass. 1940)). Failing complete performance, a contractor "who in good faith substantially performs a contract may recover in quantum meruit." J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986)(citing Andre, 26 N.E.2d at 348). "It is equally well established that 'an intentional departure from the terms of the contract without justification or excuse in matters other than those so trifling as to be properly regarded as falling within the rule of de minimis will bar all recovery for materials supplied and work performed.'" Hayeck Bldg. & Realty Co. v. Turcotte, 282 N.E.2d 907, 910 (Mass. 1972)(quoting Russo v. Charles I. Hosmer, Inc., 44 N.E.2d 641, 643 (Mass. 1942)).

On the present record, USS does not dispute that Cyclone neither completely nor substantially performed the work contracted for, and that this failure to perform was not excused. Therefore, as a matter of Massachusetts common law, Cyclone is not entitled to recover any amount from DeMatteo either under the contract or under

-5-

a theory of quantum meruit.  However, USS  contends that the terms of the contract between Cyclone and DeMatteo alter the common law, permitting Cyclone to recover sums due under the contract from DeMatteo, even if Cyclone breached the contract.  This alteration by contract of the common law rule requiring complete and strict performance as a condition of compensation under the contract is a legal possibility.  See Walsh v. Atlantic Research Assoc., 71 N.E.2d 580 (Mass. 1947) (finding that parties can provide by the terms of the contract that a breaching party is entitled to damages).

USS relies on Article XV of the 1996 contract (Article XVI of the 1999 contracts)[4] to support its claim that the contract alters the common law rule.  Article XV states in relevant part as follows.

Article XV - REMEDIES OF GENERAL CONTRACTOR

The Subcontractor stipulates and agrees that each of the agreements and covenants herein contained, and by it made, constitutes a material condition of this Subcontract.  In the event of any breach by the Subcontractor of any condition of this Agreement or of the General Contract Documents herein incorporated by reference, then and in that event **the Contractor may:**

(1) **Deduct from any payment otherwise due or becoming due all sums chargeable to Subcontractor and damages due from said breach;** and

---

[4]All three contracts contain substantially similar provisions relating to the rights of the general contractor upon the subcontractor's default.  For the sake of simplicity, we refer to the provisions at issue collectively as "Article XV".

> (2) Terminate the Subcontract for default in the following manner...
>
> **Upon such termination for default the General Contractor may** take immediate possession of all equipment, materials, tools, and appliances at the site or sites of the Subcontract work and may complete said work either with its own forces or by the employment of any other person, firm, or corporation. No further payment shall be or become due the Subcontractor following such termination for default. When the work is wholly complete, the Subcontractor shall pay General Contractor all costs of completing the work and all damages of every kind or nature caused by said termination **less the amount of any balances due the Subcontractor.**

(emphasis added).

USS argues that a fair reading of these contract provisions requires that the general contractor pay the subcontractor for work performed despite the subcontractor's breach, and that this amounts to an agreement to modify the subcontractor's common law rights of recovery. We disagree.[5]

In using the clause "the contractor may..." before the specification of two remedies, Article XV sets forth elective rights of the general contractor in case of breach by the subcontractor. Under Massachusetts law, if a contract does not

---

[5]In advancing its reading of the contract, USS relies on a district court opinion interpreting a similar contract between Cyclone and another general contractor in accordance with USS's position. <u>See</u> USS v. <u>Modern Cont'l Constr. Co, Inc., and Modern Continental/Obayashi</u>, No. Civ.A.01-10561-DPW, 2002 WL 1949223 (D. Mass. Aug. 5, 2002). Notwithstanding the similarities in the contract provisions, that case is not currently before us, and there may be differences between <u>Modern Continental</u> and the instant case which would only become evident upon closer scrutiny of <u>Modern Continental</u>.

specify that the remedies identified are exclusive, or that they abrogate the common law remedies available, the common law remedies still apply. Global Software, Inc. v. DTS Software Brasil, LTDA, No. Civ.A.00-10033-GAO, 2002 WL 73819, at *2 (D. Mass. Jan. 15, 2002)("[U]nder Massachusetts law, expressly stated remedies are not automatically exclusive."); Finkelstein v. Sneierson, 173 N.E. 703, 704 (Mass. 1930) ("[T]he remedy provided [in the agreement] was not exclusive of the plaintiff's right to maintain an action for damages for breach of the agreement."); 17A Am. Jur. 2d Contracts § 748 (2002) (collecting cases) ("Where, however, there is no express or implied limitation in the contract making the stated remedy exclusive, the prevailing view seems to be that a party may at his election pursue either the prescribed remedy or any other remedy the law gives."). Therefore, the general contractor may elect not to exercise any of its options under Article XV when the subcontractor breaches the contract, relying instead on the applicable common law rule to defend itself against any claims for relief brought by the breaching subcontractor.

Due to Cyclone's admitted material breach by abandonment of the contract, DeMatteo was discharged from its obligations under the contract, obviating, in this case, DeMatteo's need to affirmatively terminate. The termination provision in a contract is applicable "only in case the [contractor] terminates the employment upon the conditions and in the manner specified in the

-8-

contract .... The provision is not applicable to the case where the [subcontractor] abandons the work under the contract." J. Alfred Dolben v. Duncan Constr. Co., 177 N.E. 105, 111 (Mass. 1931).[6] See 13 A.L. Corbin, Corbin on Contracts §1252 (Interim ed. 2002) (breach of a contractual duty by one party to a bilateral contract discharges the duty of performance on the part of the other.).

Unwilling to accept the legal implications of the material breach of the contract by Cyclone through abandonment, USS argues that it is owed money under Article XV(1) by reference to Article IX of the contract. Article IX mandates payment by the general contractor to the subcontractor for work performed during the period of the contract when the general contractor receives payment from the owner.[7] USS argues that this payment constitutes "payment otherwise due or becoming due" under Article XV(1) which

---

[6]We recognize that the parties in J. Alfred Dolben were an owner and a general contractor. We see no reason why the principle would change when the parties are a general contractor and a subcontractor.

[7]Article IX provides in relevant part:

(1)  If and when the General Contractor receives payment from the Owner...it shall pay said sum to the Subcontractor less an amount of five percent....which shall be held as retainage.

(2)  The amounts to be retained by the General Contractor shall become due and payable upon determination by the Owner's Engineer of the final quantities hereunder...and, as a further condition precedent to payment of any retainage, Subcontractor must furnish...evidence that the Subcontract work has been fully performed.

DeMatteo must furnish to Cyclone before proceeding to terminate the contract according to Article XV(2). We find this argument unpersuasive.

Because Cyclone committed a material breach by abandoning work under the contract, DeMatteo was discharged from its contractual obligations, and the provisions of the contract concerning payment, even assuming the meaning advanced by USS, were no longer available to Cyclone as the basis for a lawsuit seeking payment for work performed. According to well established authority, "one guilty of wilful breach can maintain no suit on that contract against the other party." Corbin, supra, §1254. Indeed, the Massachusetts rule that a contractor "cannot recover on the contract itself without showing complete and strict performance of all its terms," Peabody N.E., Inc., 689 N.E.2d at 779, is akin to this general principle of contract law.

Moreover, Article XV(1) is in the section of the contract titled "Remedies of the General Contractor." Although this section does not obligate DeMatteo to invoke the stipulated remedies, neither does it authorize an affirmative claim by the subcontractor against the general contractor in derogation of the common-law rights of the general contractor. Since USS stands in the shoes of Cyclone, USS has no greater rights than Cyclone would. Thus, there

is no basis for USS to recover any amount from DeMatteo under Article XV(1).[8]

## III.

Subsequent to the district court's entry of summary judgment for DeMatteo, USS filed an unsuccessful Fed. R. Civ. P. Rule 60(b) Motion for Relief from Judgment. We review the district court's denial of USS's Rule 60(b) Motion for abuse of discretion, proceeding with "the understanding that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

Rule 60(b) provides that "[o]n a motion and upon such terms as are just, the court may relieve a party...from a final judgment, order, or proceeding" for six enumerated grounds. USS asserts three of those grounds: 60(b)(1) mistake, inadvertence, surprise, or excusable neglect; 60(b)(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), and; 60(b)(3) fraud, misrepresentation, or other misconduct of an adverse party.

---

[8]USS concedes in its reply brief that Article XV(2) does not apply because DeMatteo did not formally terminate the contract: "There is no evidence, and no claim, that DeMatteo terminated Cyclone. Thus the termination provision, whatever it means, is not at issue."

-11-

## A.  Rule 60(b)(2)

We begin our analysis with Rule 60(b)(2), the ground addressed most comprehensively by the district court.  In arguing "newly discovered" evidence, USS retracts its concession of Cyclone's breach without substantial performance on one of the contracts and alleges breach by DeMatteo due to chronically delinquent payment under all three contracts, implying that this delinquency caused Cyclone's breach by driving Cyclone into bankruptcy.

In an affidavit dated March 25, 2002 (nearly four months after the district court entered summary judgment for DeMatteo), David Karr, an employee of USS, attests to the evidence indicating substantial performance on one of the contracts, and attempts to explain why this information was not presented at the September 5, 2001 hearing on summary judgment, despite the fact that the materials were in the possession of USS prior to this date.  He explains that Cyclone forwarded nearly two hundred boxes of materials concerning this matter and hundreds of other contracts, and it took time to identify and assess information relevant to the three Cyclone-DeMatteo contracts at issue.  Because Karr "made every effort to obtain and review all of the pertinent documents and information," USS argues that the materials are "newly discovered" and "could not by due diligence" have been discovered sooner.

In light of this claim, we juxtapose a timeline of the legal proceedings against USS's acquisition and review of evidence pertinent to its lawsuit. On December 17, 1999, in the United States Bankruptcy Court for the District of Maryland, USS was determined to be a secured creditor of Cyclone and was authorized to review Cyclone's records, thus triggering USS's interest in the contractual relationship between Cyclone and DeMatteo and its right of access to evidence pertaining to the DeMatteo contracts contained in Cyclone's records. Although USS protests that it did not actually receive Cyclone's records until July 26, 2001, it filed its lawsuit against DeMatteo on April 4, 2001. Not surprisingly, DeMatteo filed an answer on April 20, 2001, and promptly moved for summary judgment on June 8, 2001. These acts of DeMatteo cannot be impugned as unfair haste just because USS set the lawsuit in motion prior to reviewing all of the evidence available to it.

Even accepting that USS only had actual possession of Cyclone's records on July 26, 2001, USS concedes that the evidence pertaining to invoices, materials supplied and work performed on the DeMatteo contracts found in Cyclone's records was in its possession six weeks prior to the September 5, 2001 hearing on DeMatteo's summary judgment motion. It also possessed the records a full four months before the district court entered summary judgment in favor of DeMatteo on November 28, 2001.

A party is entitled to relief, under Rule 60(b)(2), from summary judgment where (1) the evidence has been discovered since the trial;[9] (2) the evidence could not by due diligence have been discovered earlier by the movant; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it would probably change the result were a new trial to be granted. <u>Mitchell</u> v. <u>United States</u>, 141 F.3d 8, 18 (1st Cir. 1998). Although, as noted, the relevant records were in its possession at least six weeks prior to the summary judgment hearing on September 5, 2001, USS did not examine the relevant evidence until after the hearing.

This failure to review the records prior to the hearing falls short of the second criterion requiring that the evidence could not by due diligence have been discovered earlier. A party seeking relief from a judgment based on newly discovered evidence must "at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings." <u>Karak</u>, 288 F.3d at 20. Since USS could have gained access to the records as early as December 1999 (when the United States Bankruptcy Court for the District of Maryland

_____

[9]In this case, the "final judgment, order or proceeding" from which the movant seeks relief is an order of summary judgment which was entered subsequent to a hearing rather than a trial. Although it refers to evidence "discovered since the trial," the <u>Mitchell</u> standard for relief under Rule 60(b)(2) is equally applicable to evidence discovered after a summary judgment hearing.

granted USS the right to review Cyclone's records), USS's protestations of inadequate time and overwhelming volume are unavailing.

The moving party bears the burden of meeting each of the four <u>Mitchell</u> criteria. Since USS fails to meet its burden with respect to the second, the district court did not abuse its discretion in denying the motion for relief from judgment under Rule 60(b)(2).

## B. Rule 60(b)(1) and (3)

Rule 60(b)(1) permits a court to relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." Here, the same impediment that barred the Rule 60(b)(2) claim for relief applies. The district court found that, if USS had acted with due diligence by either procuring the records from Cyclone earlier or reviewing the records more quickly when they were received, it could have brought the evidence to the court's attention prior to the September 5, 2001 hearing. Therefore, there is no element of surprise, inadvertence, or excusable neglect in USS's failure to discover the evidence sooner. As outlined above, USS has had access to Cyclone's records since December 1999. The information therein, pertaining to invoices, materials supplied and work performed, was foreseeably relevant to the lawsuit that USS initiated. <u>See</u> <u>Barrett</u> v. <u>Lombardi</u>, 239 F.3d 23, 28 (1st Cir. 2001) ("[W]here the plaintiff should have been

-15-

aware of the deficiencies in his case before the entry of judgment, relief under Rule 60(b) would not have been justified.") (quoting Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 29 (1st Cir. 1980))(alteration in original)(internal quotations omitted).

To obtain relief from judgment under Rule 60(b)(3) due to "fraud, misrepresentation or other misconduct of an adverse party," the movant must demonstrate misconduct by clear and convincing evidence.[10]  Karak, 288 F.3d at 20-21 (citing Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988)).  USS alleges that DeMatteo's failure to provide information regarding performance and payment under the contract -- which it "knew or should have known directly undermined the arguments it was making to the district court" -- amounts to misconduct.  However, USS offers no evidence that it sought such information prior to filing its Rule 56(f) motion[11] and concedes that it did not seek formal discovery from DeMatteo.  On this record, the district court did not abuse its discretion in determining that "claims that the defendants acted fraudulently are groundless" and denying the motion for relief from judgment under Rule 60(b)(3).

---

[10]The movant must also show that the misconduct foreclosed full and fair preparation or presentation of his case.  However, since USS failed to provide sufficient evidence of misconduct, we do not reach this second criterion.

[11]USS asserts that it "sought the relevant information from DeMatteo long before it commenced this action" but makes no effort to substantiate this statement.

-16-

USS also appeals the district court's denial of its Rule 56(f) Motion for Additional Discovery and its request for certification to the Supreme Judicial Court of Massachusetts.

## A. Rule 56(f) Motion for Additional Discovery

The management of pretrial discovery lies primarily within the sound discretion of the district court. Faigin v. Kelly, 184 F.3d 67, 84 (1st Cir. 1999). This court "will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Filiatrault v. Comverse Tech. Inc., 275 F.3d 131, 137-38 (1st Cir. 2001) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)). USS does not satisfy this stringent test.

In its Rule 56(f) motion, USS conceded that there was no substantial performance of the contracts, and it did not seek evidence to prove otherwise. At the September 5, 2001 summary judgment hearing, USS merely requested that the court "allow some additional discovery into what the damages would be or are, would be, if we are entitled to recover, because that might bring the matter to an end." Thus, USS did not seek discovery on an issue of material fact that could alter the outcome of DeMatteo's contention on summary judgment that, as a matter of contract law, USS was not entitled to any recovery. It was well within the district court's

discretion to postpone discovery pertaining to calculation of damages until after its decision on the dispositive legal issue.

**B.  Request for Certification**

Certification of a question of Massachusetts law to the Supreme Judicial Court is proper when the question is "determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the Supreme Judicial Court]." Mass. S.J.C.R. 1:03. See Nett ex rel. Nett v. Bellucci, 269 F.3d 1, 8 (1st Cir. 2001).

The district court's decision as to whether or not to certify is reviewed for abuse of discretion.  As USS correctly notes, the Supreme Court has observed that certification is particularly appropriate where the question at issue is novel, and the law unsettled.  Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974).  However, there is nothing novel or unsettled about Massachusetts law on the rights, if any, of a subcontractor who did not substantially perform under his contract, to recover payment from a general contractor for work performed by the subcontractor before he walked off the job.  In the recent case of Peabody N.E., Inc., 689 N.E.2d at 774, the Supreme Judicial Court affirmed the well-established principle that contractors "cannot recover on the contract itself without showing complete and strict performance of all its terms," and that a contractor can recover under a theory of

-18-

quantum meruit only "if he can prove both substantial performance of the contract and an endeavor on his part in good faith to perform fully." Id. at 779-80. This is a recent and unambiguous statement of Massachusetts law. There was no abuse of discretion in the district court's denial of USS's request for certification.

**V.**

For the reasons stated above, the decision of the district court is affirmed.

So ordered.

-19-