Sanders, Janet L., J.
This is a contract dispute arising from a state- and federally-funded project to design and construct a fiber optic network in western Massachusetts. Plaintiff G4S Technology, LLC (G4S), the design-builder on the project, claims that the defendant Massachusetts Technology Park Corporation (MTPC) wrongfully denied a $10.1 Million “Request for Adjustment” claim, and that MTPC improperly withheld an additional $4.1 Million based on unfounded claims of late delivery and poor quality of work. G4S asserts claims for breach of contract and breach of warranty, and (by way of a motion to amend) for quantum meruit. MTPC, in turn, brings counterclaims against G4S alleging (among other things) fraud and violation of G.L.c. 93A; it seeks several million dollars of additional damages beyond the retained amount. MTPC now moves for summary judgment as to G4S’s claims against it, asserting that G4S is precluded from recovery because it intentionally breached its own contractual obligations.[1] MTPC also moves for summary judgment in its favor on some of its counterclaims. For the reasons set forth below MTPC’s Motion is Allowed as to G4S’s Complaint but Denied as to MTPC’s counterclaims.[2]
BACKGROUND
MTPC is a state development agency established and organized under G.L.c. 40J. In July 2010, it received both state and federal funding to build a 1,200-mile fiber optic network known as MassB-roadbandl23 in western Massachusetts (the Project). Of that amount, $45.4 million was awarded pursuant to the American Recovery and Reinvestment Act of 2009 (ARRA), Pub. L. No. 111-5. One of the stated goals of ARRA was (as its title suggests) to create jobs in the wake of the 2008 recession and to provide a direct financial boost to those impacted by the eco *302 nomic crisis. In the context of the instant case, that meant that, if there were to be subcontractors on the job providing labor and materials, they needed to be paid on a timely basis in keeping with the statutory purpose of stimulating the economy.
MTPC put the Project out for a public bid, and a design-build contract with G4S was executed on June 30, 2011 (the Contract). In line with federal requirements, the Contract had specific provisions to ensure timely payment of subcontractors. Specifically, Section 6.3.1 of the Contract stated:
Design Builder [G4S] will pay Design Consultants and Subcontractors, in accordance with its contractual obligations to such parties and subject to any provisions of such contracts regarding the withholding of sums from any subcontractor or design consultants for their non-compliance with or non-performance of their contracts, all the amounts Design-Builder [G4S] has received from Owner [MTPC] on account of their work.
To make sure that G4S honored this obligation, the Contract stated that G4S had to include with its own applications for payment a “progress payment release” (the Certification). See Section 6.1.1 of Contract. The Certification (attached to the Contract as Exhibit B-l) stated that G4S “represents and warrants” that:
all subcontractors, suppliers and equipment providers of the undersigned have been paid in full all amounts due to them up to the date of this Certification, and that sums received in payment for the Amount Requested shall be used to forthwith pay in full all amounts due to such subcontractors, suppliers, and equipment providers up to the date hereof.
Contract at Exhibit B-l, IE. The Contract made the submissions of these Certifications part of the “Work” G4S agreed to perform. See Section 1.2.13 of the General Conditions of Contract (defining “Work”). Finally, the Contract stated that G4S had to comply with all applicable state and federal laws, including the False Claims Act, 15 U.S.C. §§3729-3733, and the Massachusetts False Claims Act, G.L.c. 12, §§5A-50. See Section 2.18.1.4 of General Conditions of Contract. The False Claims Act makes it unlawful to knowingly make a false statement in order to get a claim for payment approved where the federal government provides some portion of that reimbursement. 31 U.S.C. §3729(a) and (c).
As the Project progressed, G4S submitted dozens of Applications for Payment accompanied by the signed Certifications that were necessary in order to obtain payments from MTPC. In each of those submissions, G4S certified that all of its subcontractors had been paid the amounts due them at the time the Certification was executed. It is undisputed that this was not true. The summary judgment record shows that G4S understood at the time that this conduct was in violation of the Contract. It also shows that the reason for the delay in payment to at least some (if not all) subcontractors was to improve G4S’s own financial picture. This was not limited to a handful of occasions but was repeated and continuous conduct that spanned more than a year.
Evidence as to G4S’s conduct, knowledge and motivation is found in G4S’s own business records and in internal correspondence as well as the deposition testimony of key G4S employees. For example, Judith Krantz, G4S’s Contract Manager responsible for paying subcontractors, acknowledged in contemporaneous emails and in her later deposition that, even as G4S was certifying to MTPC that all amounts due had been paid to subcontractors, there were in fact past due invoices for significant sums that were outstanding at the time the Certifications were executed. Krantz knew this, yet submitted the Certifications anyway. Among those who did not receive timely payments were NextGen, Gannett-Fleming, Phoenix, Penta Communications, Annese Electric, and Tower Resources Management, Inc. There is undisputed evidence that G4S timed its payments to these subcontractors so that they occurred after G4S’s own quarterly financial statements came out. In one internal email dated September 25, 2012, G4S project manager Scott Mailman pointedly criticized this practice, writing: “How can we tell subs that they aren’t getting paid so our books look better? There’s something wrong with that.”
These delays did not go unnoticed by the subcontractors, who in some instances strongly objected and threatened to shut down work or pull crews if G4S continued to withhold payments even as it was getting paid by MTPC. As one subcontractor stated in an email to G4S’s Treasurer: “I think it is extremely unfair that you are not honoring our contract . . . The issue that bothers me the most is that you are not making payment to better your books but don’t care about the books of the companies that support you.” In September 2012 emails to Krantz, subcontractor NextGen noted that it had past due invoices to G4S in the amount of $358,275; a NextGen representative stated that “(t]his is a ’’significant problem for us" and that “nextGen’s cash flow challenges will be exacerbated as we ramp up our number of crews if we are not paid within [contract] terms.” In December 2012, another unpaid subcontractor (Annese) actually threatened to stop work because of unpaid invoices and then in June 2013, emailed G4S again to complain, citing specific sections of the subcontract that required payment within a certain time. Annese made the same threat again in December 2013, when G4S persisted in its practice of late payments. When subcontractor Penta asked on December 2013 about its outstanding invoices, Krantz informed it that “all subcontract payments are on hold until after the first of the year,” prompting a Penta representative to reply: “That is not acceptable. This money is due and I need to collect it before the end of the year. This is a direct violation of *303 the contract.” It too threatened to pull crews off the job on more than one occasion. Even as these objections and complaints were being made, G4S continued to submit to MTPC Certifications that these subcontractors had been paid for all amounts due in order to obtain full payment for itself.
At some point, a dispute developed between the parties over which of them was responsible for delays and disruptions connected to the Project, and MTPC decided to withhold funds from G4S. In response, G4S commenced this action in September 2014. In early January 2015, MTPC provided G4S with a Certificate of Final Completion.
DISCUSSION
MTPC moves for summary judgment both as to the claims against it and on its counterclaims. This Court will discuss that part of the motion dealing with G4S’s claims first.
MTPC contends that G4S cannot recover under any contract or quasi-contract-based theory because the undisputed evidence shows that it intentionally failed to perform its own contractual obligations. In opposition, G4S argues, among other things, that to preclude G4S from pursuing its multimillion dollar claims would be grossly disproportionate to the harm that flowed from its own failure to timely pay subcontractors and would be manifestly unfair. More specifically, it contends that any breach that occurred on its part was “de minimis” and at the very least, should not prevent it from recovering in quantum meruit. After a careful examination of the applicable law, this Court concludes that G4S is indeed prevented from seeking recovery on its own claims as a consequence of its intentional breaches of the Contract.
It is well established that a contractor like G4S “cannot recover on the contract itself without showing complete and strict performance of all its terms.” Peabody N.E., Inc. v. Mansfield, 426 Mass. 436, 441 (1998), quoting Andre v. Maguire, 305 Mass. 515, 516 (1940); see also United States Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 48 (1st Cir. 2002); PDM Mech. Contractors, Inc. v. Suffolk Const. Co., Inc., 35 Mass.App.Ct. 228, 230 (1993). The undisputed facts show that G4S did not completely and strictly perform all of its obligations under the Contract. Although a contractor may still be able to recover under a theory of quantum meruit, that would be permitted only if it proves “both substantial performance of the contract and an endeavor on [its] part in good faith to perform fully.” Peabody N.E., Inc., 426 Mass, at 442; see also United States Steel, 315 F.3d at 48; PDM Mech. Contractors, Inc., 35 Mass.App.Ct. at 230-31. An intentional departure from contractual requirements is not consistent with good faith and will bar even a quantum meruit recovery unless the departure is de minimis. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 794 (1986), quoting Andre, 305 Mass. at 516; see also Hayeck Bldg. & Realty Co. v. Turcotte, 361 Mass. 785, 789 (1972); Peabody N.E., Inc., 426 Mass. at 442; United States Steel, 315 F.3d at 48. Thus, contrary to G4S’s position, the breach in question does not have to be so material as to go to the “essence of the contract.” Service Publications Inc. v. Goverman, 396 Mass. 567, 573 (1986), citing Sipley v. Stickney, 190 Mass. 43, 46 (1906); see also McNeal-Edwards v. Frank L. Young Co., 51 F.2d 699, 702 (1st Cir. 1931). The violation at issue here was not de minimis.
The undisputed deposition testimony from G4S’s Contract Manager and Deputy Program Manager as well as G4S’s internal email communications show that G4S repeatedly withheld past due payments from at least some of its subcontractors at the same time that it sent Certifications to MTPC representing and warranting that these same subcontractors had been paid all amounts due them. This evidence also establishes that G4S, a publicly traded company, deliberately withheld these payments not for any legitimate reason but instead for the purpose of showing higher cash balances on its periodic financial statements.[3] Sections 6.1.1 and 6.3.1 of the Contract explicitly required not only that payment to subcontractors be made within the time frames specified in the subcontracts, but also required G4S to submit written Certifications to that effect in order to get MTPC to pay it. Based on this undisputed evidence, this Court concludes that G4S’s actions were intentional breaches of the Contracts and that its conduct was of the sort that precludes all recoveiy from MTPC.
In an attempt to avoid this result, G4S makes several arguments as to why the common-law rule barring recovery should not be applied to it. The Court will address each in turn.
First, G4S contends that the subcontractors agreed to the late payments and that as a consequence, there was a modification of the underlying subcontracts; thus, G4S (it is argued) was not technically wrong in certifying to MTPC that it had paid the subcontractors what was contractually due and owing. This position is simply not supported by the evidence in the summary judgment record, however. For example, G4S’s contract manager Krantz states in an affidavit that “G4S made agreements with subcontractors regarding payment of certain invoices that varied the payment terms in their subcontracts. "Jennifer Krantz Aff. at ¶¶16-18 (emphasis added). Clearly, that does not cover all of them. Moreover, email exchanges between G4S and its subcontractors show that in 2012 and 2013, when these events took place, there were several subcontractors who were unhappy with the late payment and who informed G4S in no uncertain terms that they regarded G4S’s practice as a direct violation of its contractual obligations. Finally, Krantz at her deposition repeatedly acknowledged that there were many outstanding invoices from subcontractors that were due and owing even as G4S was representing to MTPC that all amount due had been paid.
*304 It is true that G4S has submitted (nearly identical) affidavits from officers of six of the seven subcontractors which state that they “did not consider payments made after the expiration of the [period for payment] to be a breach of the Subcontract.” These affidavits were submitted well after this litigation began and appear to contradict in several respects what the subcontractors did and said at the time of the events on question. Accepting them at face value, however, these affidavits show only that the subcontractors were willing to accept late payment, not that they agreed to a permanent modification of their subcontracts so as to permit a different payment schedule. Indeed, regardless of whether the subcontractors tolerated the delays, that does not change the fact that the Certifications submitted to MTPC were inaccurate. In those Certifications, G4S represented to MTPC that “all subcontractors, suppliers and equipment providers of the undersigned have been paid in full all amounts due to them” at the time the Certification was executed. Clearly, that was not true and G4S knew that at the time.
Second, G4S argues that Section 10.2 of the Contract, entitled “Owner’s Right to Perform or to Terminate for Cause,” supplants the common-law rule barring recovery on a contract not strictly and completely performed. That section sets forth specific remedies for breach of contract (i.e., termination, cure, and recovery of all costs and expenses including attorneys fees). Certainly, parties can limit their remedies and entirely eliminate a remedy that would otherwise be available at common law. See, e.g., Walsh v. Atlantic Research Assoc., 321 Mass. 57, 62-63 (1947). Section 10.2 does no such thing, however.
“Under Massachusetts law, if a contract does not specify that the remedies identified are exclusive, or that they abrogate the common law remedies available, the common law remedies still apply.” United States Steel, 315 F.3d at 49; see also Finkelstein v. Sneierson, 273 Mass. 424, 704 (1930). That is precisely the case here. Section 10.2.1 of the Contract states that, upon a default, “Owner, in addition to the rights and remedies provided in the Contract Documents or law, shall have the rights set forth in Sections 10.2.2 through 10.2.4." (Emphasis added.) Section 10.2.2through 10.2.4 provide that, upon default, the “Owner may provide written notice to Design-Builder that it intends to terminate the Agreement unless the problem cited is cured” and that upon failure to cure, the “Owner may” terminate the agreement, hire others to correct the problem, withhold payment otherwise due to “Design-Builder,” or take steps to mitigate the effects of the default. (Emphasis added.) This permissive language is significant. See, e.g., United States Steel, 315 F. 3d at 50 (where contractual clause stated that “the contractor may” before specifying remedies for breach, the provision did not supplant common law remedies); compare Walsh, 321 Mass. at 59, 63 (relevant clause used the word “shall” and used other language that made remedy exclusive in nature). In short, Section 10.2 provides for remedies in addition to the common law and does not by its terms prevent MTPC from invoking the common law rule at issue here.
Third, G4S contends that the common law rule should not apply because any breach on its part was cured. In support, it relies on evidence that all the contractors were eventually paid in full. That the subcontractors were eventually paid what they were owed, however does not change the fact that G4S made inaccurate representations to MTPC in its Certifications. In order to cure that breach, G4S would have had to inform MTPC of the error at or near the time the statements were made, before MTPC was induced to make any payment. It did no such thing.
G4S’s strongest argument is that this is not the kind of conduct that would support the very large forfeiture that would occur here—namely, the loss of G4S’s right to collect millions of dollars from MTPC that G4S alleges were wrongfully withheld.[4] That is particularly true since the job was ultimately completed and there is no evidence that any delays in payment had any impact on the Project itself. Thus, even assuming an intentional breach, G4S contends that it should not be precluded from pursuing its claim under a theory of quantum meruit. It points out that this theory is one derived from principles of equity and fairness, and argues that it would be unjust to deprive it of compensation for the work it performed so long as that performance was substantial.
The case law is clear, however, that the quantum meruit doctrine has no application in the case of an intentional breach by the claimant unless the claimant can prove “both substantial performance of the contract and an endeavor on his part in good faith to perform fully, and the burden is upon him to prove both.” Andre, 305 Mass. at 515 (emphasis added). “In the absence of special exculpating circumstances, an intentional departure from the precise requirements of the contract is not consistent with good faith in the endeavor fully to perform it, and unless such departure is so trifling as to fall within the de minimis rule, it bars all recovery.” Id. Thus, it is not enough for G4S to show that it substantially performed. It must further demonstrate that the breach was as so insubstantial as to be trivial, or that there were other mitigating factors. Such mitigating circumstances exist where the party complaining of the breach was itself partially responsible for the plaintiffs nonperformance. See, e.g., Peabody N.E., Inc., 426 Mass. at 442; see also J.A. Sullivan Corp., 397 Mass. at 794. Certainly, there are no such circumstances present here.
The issue thus boils down to whether G4S’s conduct was insignificant enough to fall within the de *305 minimis rule as articulated and described in the case law. This Court concludes that it was not. In an effort to convince the Court otherwise, G4S points out that it completed the Project, eventually paid all of the subcontractors in full, and that late payments never impacted the physical work on the Project or for that matter really harmed MTPC in any material way. As to the extent of harm, that may very well be relevant in terms of whether MTPC can affirmatively recover; it is not relevant in determining whether the common law rule bars G4S’s claims. Moreover, this Court does not view G4S’s conduct to be consistent with the good faith that the doctrine of quantum meruit requires. The reason for delaying payment to the subcontractors was to improve its own financial picture, even if this meant that the subcontractors themselves would suffer. The requirement that payments be timely was an important part of this Contract; a large part of the funding for the Contract was pursuant to a statute intended to improve the lot of everyone hurt by the 2008 financial crisis, not just those at the top. Consistent with this purpose, MTPC was required, as a condition of the grant, to “make drawdowns from the funds as close as possible to the time of making disbursements” and to “monitor cash draw downs by their subgrantees to assure that they conform substantially to the same standards of timing and amount as apply to advance the grantees.” 15 C.F.R. §24.20. The Contract reflected these mandates. Read in the context of the ARRA, it is clear that the timely payment and certification requirements were key aspects to G4S’s “Work” under the Contract, not some incidental or trivial activity separate and apart from the physical work. And the failure to adhere to these requirements was not confined to a handful of occasions but constituted a continuing course of conduct spanning more than a year.
MTPC asserts that the same undisputed facts that entitle it to judgment in its favor on G4S’s Complaint also entitle it to judgment on its counterclaims for fraud and violation of G.L.c. 93A. It is one thing for this Court to conclude that G4S’s conduct bars it from pursuing claims against MTPC. It is another thing entirely, however, for this Court to conclude that MTPC is entitled to summary disposition of its own claims against G4S. One does not necessarily follow from the other.
While the record before the Court supports the conclusion that the inaccurate Certifications amounted to an intentional breach of contract that was not de minimis, the record does not similarly permit the Court to find, as a matter of law, that the filing of the Certifications constituted material misrepresentations sufficient to support an affirmative claim by MTPC for fraud. Likewise, although G4S’s conduct was of the sort that prevents it from recovering on its own claims, it remains a question of fact as to whether that same conduct constitutes the kinds of unfair and deceptive business practice prohibited by Chapter 93A so as to give MTPC a right to recover under that statute. This is particularly true given the absence of any clear evidence in the record that MTPC suffered any concrete loss of money or property—an indispensable element of any claim made pursuant to G.L.c. 93A, §11. See Auto Flat Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 823 (2014). Finally, a 93A claim under Section 11 may only be brought by a person acting in a business context. See Frullo v. Landenberger, 61 Mass.App.Ct. 814, 821 (2004). In the instant case, there is a real question as to whether MTPC, a government agency without a profit motive, was engaged in trade or commerce when it entered into the Contract with G4S so as to have standing to seek 93A relief. See All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston, 416 Mass. 269, 271 (1993) (public hospital was not a “person” engaged in “trade or commerce” for purposes of G.L.c. 93A, §11 when it solicited bids and awarded contracts for food and vending services at its facility).
CONCLUSION AND ORDER
Accordingly, for the forgoing reasons, the Motion for Summary Judgment brought by Massachusetts Technology Park Corporation is ALLOWED as to G4S Technology, LLC’s Complaint but DENIED as to the counterclaims.

 At the same time the summary judgment motion was filed, G4S moved to amend its complaint to add a quantum meruit claim. As of the date of the hearing, MTPC opposed that motion only on the grounds of futility and, as part of the presentation on its summary judgment motion, argued that there was no legal basis for the quantum meruit claim either. Thus, in disposing of the summary judgment motion, this Court deals with the merits of the quantum meruit claim at the same time.

 MTPC also moved to strike all or portions of affidavits submitted by G4S in opposing the summary judgment motion. The Court declines to address those motions, since MTPC would prevail even if they were all denied.

 G4S maintains that in some instances, it rightfully withheld payment due to performance, technical, or billing issues. Assuming that to be true, that does not change the fact that on numerous other occasions, payment was withheld because G4S wanted to improve its own financial picture, not because it had a right to withhold payment pursuant to its contract with the subcontractor.

 Although MTPC vehemently denies that it owes G4S anything quite apart from the reasons it offers in support of the instant Motion, this Court assumes for purposes of this Motion that G4S’s claims are meritorious.