Sanders, Janet L., J.
This is a contract-based dispute arising from a state and federally-funded project to design and construct a fiber optic network in western Massachusetts. Plaintiff G4S Technology LLC (G4S), the design-builder on the project, instituted the lawsuit claiming that the defendant Massachusetts Technology Park Corporation (MTPC) wrongfully denied a $10.1 Million “Request for Adjustment” claim and improperly withheld an additional $4.1 Million based on unfounded claims of late delivery and poor quality of work. MTPC counterclaimed, alleging fraud and violation of Chapter 93A.[1] In an earlier decision, this Court allowed MTPC’s motion for summary judgment as to G4S’s claims, relying on appellate case law which held that an intentional breach by one of the parties to a contract prevented it from recovering on its own contract-based claims so long as that breach was not de minimis. See Memorandum of Decision and Order dated March 29, 2016 (the March 2016 Decision) [33 Mass. L. Rptr. 301].
Now before the Court are two motions. The first is G4S’s Motion for Partial Summary Judgment on so much of MTPC’s counterclaim that asserts a 93A violation.[2] Among other arguments, G4S contends that MTPC is not engaged in “trade or commerce” and thus may not proceed under G.L.c. 93A, §11. The second motion is brought by MTPC and seeks judgment in its favor on both the Chapter 93A claim and the common-law claim of fraud. In opposing that motion, G4S argues that it is entitled to judgment in its favor because MTPC cannot demonstrate that it has suffered any damages, particularly in light of the fact that it has already been successful in obtaining this Court’s ruling that G4S cannot assert its own claims. This Court concludes that G4S’s Motion must be Allowed, MTPC’s motion must be Denied and that both the 93A and the fraud counts must be dismissed.
BACKGROUND
MTPC is a state development agency established and organized under Chapter 401. As stated in the enabling legislation, its purpose is to “foster the expansion of industrial and commercial activity and employment opportunities in the commonwealth.” G.L.c. 40J, §1A. One of MTPC’s divisions, Massachusetts Broadband Institute (MBI), is charged with expanding the broadband infrastructure in Massachusetts. G.L.c. 40J, §6B(b). In 2010, consistent with these purposes, MTPC received $45.4 million in federal funding together with additional money from the state to build MassBroadband 123 (the Project). The federal funds were stimulus money allocated through the American Recovery and Reinvestment Act of 2009.
The Project involved the creation of a 1,200-mile fiber optic network. As described on MBI’s website, the Project, once completed, would allow public safety entities, schools, libraries, medical facilities and town halls in western Massachusetts to get high speed internet access. This would in turn “provide the necessary broadband infrastructure to foster economic growth, improve health care and education, and strengthen public safety.” MTPC put the Project out to public bid and ultimately selected G4S as the design builder of the Project. A design build contract between the two was executed on June 30, 2011 (the Contract).
A Request for Proposal, incorporated into the Contract, indicated that, once complete, the broadband network would be turned over in segments to MTPC’s chosen “Network Operator.” The Network Operator would make the expanded network available to targeted communities for a fee which would then be turned over to MTPC. MTPC uses the monies generated from that fee to offset certain expenses incurred in connection with the network and to create a reserve fund for the network’s eventual upgrade, consistent with its legislative mandate.
The Contract had specific provisions to ensure timely payment of subcontractors. Specifically, Section 6.3.1 of the Contract stated:
Design Builder [G4S] will pay Design Consultants and Subcontractors, in accordance with its contractual obligations to such parties and subject to any provisions of such contracts regarding the withholding of sums from any subcontractor or design consultants for their non-compliance with or non-performance of their contracts, all the amounts Design-Builder [G4S] has received from Owner [MTPC] on account of their work.
To make sure that G4S honored this obligation, the Contract stated that G4S had to include with its own applications for payment a “progress payment release” (the Certification). See Section 6.1.1 of Contract. The Certification (attached to the Contract as Exhibit B-l) stated that G4S “represents and warrants” that:
all subcontractors, suppliers and equipment providers of the undersigned have been paid in full all amounts due to them up to the date of this Certification, and that sums received in payment for the Amount Requested shall be used to forthwith pay in full all amounts due to such subcontractors, suppliers, and equipment providers up to the date hereof, excluding only the value of any Pending *144 Changes and Disputed Claims submitted in accordance with the General Conditions of the Contract.
Exhibit B-l to Contract, IE. The Contract provided that if G4S failed to pay a subcontractor in a timely fashion without cause, then MTPC could withhold payment to G4S. See 10.2.1,10.2.3 of Contract. As the Project progressed, G4S submitted dozens of Applications for Payment accompanied by the signed Certifications that were necessary in order to obtain payments from MTPC. In each of those submissions, G4S certified that all of its subcontractors had been paid the amounts due them at the time the Certification was executed.
As explained in this Court’s March 2016 ruling, it is undisputed that this was not true. Moreover, the summary judgment record shows that: a) G4S understood at the time that this conduct was in violation of the Contract; and b) the reason for the delay in payment to at least some (if not all) subcontractors was to improve G4S’s own financial picture. This was not limited to a handful of occasions but was repeated and continuous conduct that spanned more than a year.[3]
On January 20, 2015, a Certification of Final Completion was issued pursuant to the Contract. MTPC withheld over $4 million of the original contract price. Of that amount, $3.2 million was for liquidated damages under Article 4 of the Contract as a result of alleged delays in completion of the work. This lawsuit ensued.
DISCUSSION A. G4S’s Motion
Count VIII of the Counterclaim asserts a claim under G.L.c. 93A, §11. That section of the statute requires that both the claimant and the target of the claim be engaged in “trade or commerce.” G4S argues that MTPC, a government entily, was acting in pursuit of its legislative mandate and thus has no standing to make a Section 11 claim. In order to determine whether MTPC is engaged in trade or commerce, this Court must examine the character of the parties and their activities, the nature of the transaction, and whether the transaction was motivated by business or personal reasons. See All Seasons Serv., Inc. v. Comm’r of Health & Hosps. of Boston, 416 Mass. 269, 271 (1993). In the instant case, it is undisputed that the purpose of the Project was to extend affordable high speed internet access to certain targeted communities and that revenue generation was only incidental to that primary mission. Under the applicable case law, this Court therefore concludes that MTPC is not engaged in trade or commerce and that Count VIII must be dismissed for this reason.
MTPC was clearly acting pursuant to a legislative mandate. As described in the Contract itself, MTPC was “doing business as the Massachusetts Technology Collaborative [MTC] acting in accordance with G.L.c. 40J, §6B.” That statute charges MTPC with investing in a broadband infrastructure in the Commonwealth through its division, MBI. The objectives that MBI was charged with achieving include:
(i) assessing and improving broadband access conditions in communities that have no access or have limited or insufficient access to broadband; (ii) promoting robust broadband access for essential state and local governmental services including, without limitation, public safety, health, and education; (iii) prompting increased availability of and competition for broadband access and related services; and (iv) creating conditions that will encourage economic competitiveness and growth.
G.L.c. 40J, §6B. In contracting with G4S for the construction of a fiber optic network, MPTC was acting in furtherance of these objectives. Where a party is motivated by a legislative mandate, and not acting for business or personal reasons, Chapter 93A does not apply. See e.g., Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 439, 440 (1998), and cases cited therein.
In opposing G4S’s motion, MTPC argues that it did indeed have a business motive since it intended to “profit” from the Project: once the fiber optic network was complete, MTPC would turn its operation and management over to a “Network Operator” that would charge a fee to the end users, with MTPC to receive proceeds from the fee. Because of the revenue generating aspect of the arrangement, MTPC argues that it was engaged in trade or commerce in much the same way as Boston University (BU) did in its contractual arrangement with the plaintiff in Linkage Corp. v. Trustees of Boston University, 425 Mass. 1 (1997). In Linkage, the plaintiff had contracted with BU to manage and market certain educational programs. The Supreme Judicial Court held that, notwithstanding the fact that BU was a nonprofit organization, it was engaged in trade or commerce because it was “motivated by a strong desire to benefit as much as possible” from an arrangement which allowed it to expand its reach into the corporate market and generate revenues for itself from the programs that the plaintiff Linkage developed. 425 Mass. at 25. Linkage is readily distinguishable from the instant case.
Unlike BU, which operated under no legislative restraints, MTPC is a creature of statute, charged by the legislature with advancing specific public purposes. Courts have consistently held that a public entily is not a “person” acting in trade or commerce for purposes of Chapter 93A even where it engages in commercial transactions. See e.g., Lafayette Place Assoc. v. Boston Redevelopment Auth. 427 Mass. 509, 535-36 (urban renewal agency that entered into a land sale with a private entity pursuant to its legislatively prescribed development mandate was not engaged in trade or commerce for 93A purposes); see also Clean Harbors of Braintree, Inc. v. Bd. Of Health of Braintree, 409 Mass. 834, 841 (1991) (town board could not bring Section 11 claim because it was not a “person” en *145 gaged in “trade or commerce”). The only exception to this general rule is where the public entity is not acting in pursuit of that public purpose. See e.g., See City of Boston v. Aetna Life Ins. Co., 399 Mass. 569 (1987) (publicly funded hospital was engaged in trade or commerce where it was acting as assignee of patients’ claims against defendant insurance company). Clearly, MTPC was acting in furtherance of its legislative purpose by entering into a contact to expand high speed internet access to certain targeted communities. Whatever revenue it generated in connection with that effort was purely incidental to the achievement of its core mission. See All Seasons Serv., Inc. v. Comm’r of Health & Hosp. of Boston, 416 Mass. 269, 271 (1993) (publicly funded hospital could not be sued under G.L.c. 93A, §11 in connection with soliciting bids for food and vending services since such services were “merely incidental to the hospital’s primary function of providing medical services”).
The instant case is far closer to Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436 (1998), than it is to Linkage. In Peabody N.E., the town had contracted with a construction company to build a waste treatment facility. The SJC held that it was not acting in a business context and therefore was not engaged in trade or commerce for purposes of Chapter 93A. In reaching that conclusion, the court pointed out that the town was a government entity that had contracted with the plaintiff pursuant to an administrative order of the Department of Environmental Quality Engineering. Although the users of the facility would be charged a fee, those fees were not to generate a profit for the town but only to defray the cost of operating and maintaining it. Similarly, the fees here are to be used by MTPC to pay staffing expenses and create a reserve fund for a future upgrade of the system. That is entirely in keeping with the public purpose behind the Project and with MTPC’s legislative mandate.
MTPC points out that in Peabody N.E. — as well as in most of the cases on which G4S relies — the public entity was the target of a 93A claim, not the complainant. But there is no indication in the case law that the test for determining whether a party is engage in trade or commerce should turn on whether that party is the plaintiff or the defendant of a Section 11 claim. Indeed, in City of Boston v. Aetna, supra, the government funded hospital was the plaintiff, and the court engages in the same analysis used in those cases where the government entity was the defendant of a 93A claim. That is, it analyzed the character and motivation of the parties and the nature of the transaction, ultimately concluding that the hospital (acting as assignee for its patients’ claims) was acting in a business context. Applying that same test to the instant case, this Court concludes that MTPC was not.
B. MTPC’s Motion
MTPC moves for summary judgment in its favor on both the Chapter 93A claim and on its claim for fraud. For the reasons set forth above, MTPC’s motion is denied as to the 93A claim. As to the claim of fraud, MTPC relies on essentially the same grounds that it advanced in seeking summary judgment in its favor as to G4S’s claims against it — namely, that G4S made intentional misrepresentations by certifying to MTPC that it had paid subcontractors all amounts owed them when in fact it had not. In its March 2016 Decision, however, this Court made it clear that its holding barring G4S’s claims against MTPC did not mean that MTPC could affirmatively recover, as a matter of law, on its fraud claim against G4S. That is because there is a difference between this Court’s conclusion that the G4S’s violations were not de mini-mis and the requirement that the misrepresentations were material — a necessary element of fraud. In its March 2016 Decision, this Court also questioned whether MTPC would be able to prove that it suffered some concrete loss. In the instant motion, MTPC attempts to demonstrate, byway of a detailed analysis of the Certifications in question, that G4S’s misrepresentations were material; it has also cobbled together an argument as to why its premature payments to G4S caused it to sustain a loss of over $1.6 million.[4]
In opposing the motion, G4S argues that, quite apart from the clear disputes of fact that prevent a summary disposition in MTPC’s favor,[5] G4S is entitled to judgment in its favor. It points out that, as a consequence of this Court’s March 2016 Decision barring G4S’s claims, MTPC will keep $4 million that it withheld from the Contract balance as a result of delays in the Project. It is also off the hook for additional amounts that G4S claimed it was due over and above the Contract price. G4S argues that to allow MTPC to affirmatively recover on the fraud claim— even assuming it could prove some concrete loss— would amount to no less than a windfall.[6] This Court agrees: to allow additional compensation to MTPC at this point would allow a double recovery for essentially the same wrong.
“Where the same acts cause the same injury under more than one theoiy, duplicative damages recoveries will not be permitted.” Szalla v. Locke, 421 Mass. 448, 454 (1995). In the instant case, the conduct that forms the basis of MTPC’s fraud claim is precisely the same as that which caused this Court to conclude that G4S had necessarily forfeited its affirmative claims against MTPC. As a consequence of the March 2016 Decision, MPTC no longer had to justify the $4 million it retained of the Contract balance; the upshot was that it was effectively provided with an award that more than covered any loss that it suffered as result of paying G4S prematurely. Any award on top of that would be entirely duplicative. See e.g., Short v. Marinas USA Limited Partnership, 78 Mass.App.Ct. 848, 858 (2011) (Common damages stemming from an indivisible harm constitute the bedrock basis of the rule, long recognized in this and other jurisdictions, that a party *146 can have but one satisfaction for the same injury). Indeed, given this Court’s conclusion that MTPC cannot proceed under Chapter 93A and thus has no prospect of recovering multiple damages, MTPC has arguably already received a windfall by obtaining a result that far exceeds any actual damages that it will be able to prove on its claim of fraud. Whether it can keep that windfall will turn on whether an appellate court agrees with this Court’s March 2016 decision — a decision that can now proceed directly to an appeal in light of today’s ruling.
CONCLUSION AND ORDER
For all the foregoing reasons, MTPC’s Motion for Summary Judgment on its Counterclaim is DENIED and G4S’s Motion is ALLOWED. It is hereby ORDERED that the remaining counts in the Counterclaim for fraud and a violation of G.L.c. 93A, §11 are DISMISSED, with prejudice.

 TPC made other claims, including a claim for indemnification (Count X). As of the date of the motion hearing, however, the only claims remaining were for fraud and a 93A violation.

 The motion also targeted MTPC’s claim for indemnification. By the date of the motion hearing, MTPC had voluntarily dismissed that claim. With that dismissal, the only remaining counts of the Counterclaim were for fraud and a violation of Chapter 93A.

 For purposes of the instant motions, this Court need not — and does not — decide precisely which Certifications were false and which invoices thus would not have been paid, although (as explained in the March 2016 Decision) there were enough of these undisputedly false Certifications for this Court to conclude that this was not a de minimis violation of G4S’s contractual obligations.

 MTPC comes up with this figure by measuring its loss against what G4S gained as a result of having received premature payments from MTPC. Specifically it argues that, had G4S not received these payments, it would have had to obtain multiple loans on which it would have had to pay interest; the damages MTPC is entitled to receive are therefore what G4S saved as a result of not paying this interest.

 In opposing MTPC’s Motion, G4S did not attempt to justify each and every Certification that MTPC claims was false. This was entirely in keeping with an earlier directive by this Court in September 2016 that, as G4S suggested, certain threshold issues as to MTPC’s entitlement to relief should be decided first.

 G4S argues in the alternative that MTPC’s damages methodology is “so flawed as to be completely unreliable.” Although this argument appears to have merit, this Court need not reach this issue since it agrees with G4S that MTPC has already been amply compensated for the wrong which is the basis for its fraud claim.